JENKINS *v.* STATE

[No. 69, September Term, 1957.]

(Two Appeals In One Record)

*Decided December 16, 1957.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Jerome Niport,* for appellant.

*E. Clinton Bamberger, Jr., Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, J. Harold Grady, State's Attorney for Baltimore City,* and *John C. Weiss, Assistant State's Attorney,* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

Charles Jenkins has appealed from the judgment and sentence of the Criminal Court of Baltimore, wherein the court, sitting without a jury, found him guilty under an indictment charging illegal possession and control of a certain narcotic drug, to wit, cannabis; and he also has appealed in the same record from the judgment of the same court entered after the appellant was found guilty under the third count of an indictment charging a violation of an ordinance of the Mayor and City Council of Baltimore, to wit, unlawfully carrying a certain pistol in a vehicle.

At about 7:00 o'clock p. m. on March 9, 1957, Officers Burke and Davis of the Baltimore City Police relieved two other police and continued the surveillance of a gasoline station on Fayette Street in Baltimore. Officer Burke verified that a package of marijuana, a popular name for the drug, cannabis, and a "pipe" for smoking the narcotic, were secreted under the washbowl in the men's room of the station. The evidence does not prove who placed the drug in the men's room, but the police did not put it there. The police remained in a back room of the station, and each time a man left the washroom one of the police immediately ascertained whether the marijuana was still under the sink. The men's room was locked, and each entrant was required to obtain the key from the office of the station.

At about 11:15 p. m. a Buick automobile was driven to the gasoline pumps. A man by the name of Laird Rose was operating this automobile and the appellant, Charles Jenkins,

was sitting in the front seat with the driver. The appellant who owned the automobile, went to the men's room, stayed only a short time, and returned to the vehicle. As soon as the appellant left the lavatory, Officer Burke looked and discovered that the cache of narcotic had been removed. Burke called Davis; they stopped the automobile as it was leaving the station, and arrested the occupants, Rose and Jenkins. The police found the marijuana package in the appellant's coat pocket, and a loaded pistol in the glove compartment of the automobile, which the appellant admitted belonged to him.

The appellant testified that he found the package containing the drug on the floor of the washroom, and that he took it because he thought it might contain money or some other valuable. He said that he did not know that it contained marijuana. He further testified that he was taking the pistol from his mother's home to his new apartment where he and his bride were residing. He did not look at the package, because he was in a hurry to return home, and he did not tell the station attendant of his find because he did not want to surrender it, particularly if it were valuable. The package was in his pocket, and the pistol was in the glove compartment of his automobile when found by the officers.

The single question presented for our determination is whether there was sufficient evidence to sustain convictions of the offenses with which the appellant was charged. When reviewing a judgment and sentence of the trial court, sitting without a jury in a criminal proceeding, our only duty is to determine whether there was evidence, or proper inferences from evidence, upon which the trial court could properly find the defendant guilty. *Craig v. State,* 214 Md. 546, 136 A. 2d 243.

I

For all practical purposes, the appellant seems to have abandoned the appeal relating to the carrying of a pistol in his automobile. He simply asks this question, Did the court have sufficient evidence to find the appellant guilty beyond a reasonable doubt of illegally carrying a deadly weapon (sic) in his vehicle? He then presents his argument with reference to the narcotic charge, but says nothing more concerning the

pistol. However, we shall consider the question briefly. The Baltimore City ordinance, introduced in evidence, provides that "No person shall carry a pistol in any vehicle * * *." Baltimore City Code (1950 Ed.), Art. 24, sec. 48. The police testified they found a pistol in the glove compartment of the appellant's automobile; the defendant testified he knew it was there—that he was transporting it from his former place of abode to his new residence. With this evidence, it should be obvious that we cannot say the trial court was clearly in error in convicting the appellant of carrying a pistol in a vehicle, which was prohibited by the ordinance. Md. Rules 741 c.

## II

With reference to the second conviction, it is conceded by the appellant that he had a narcotic drug in his possession. He argues, however, that the evidence is insufficient to establish the fact that he *knowingly* had it in his possession. He contends that the circumstances clearly bear out his contention that he merely found the drug in a package, and did not know what it was; consequently, his conviction was wrongful in that the evidence offered by the State failed to establish that he *knew* that it was a narcotic drug that he had in his possession. This argument assumes a fallacious premise: that under the indictment in this case, it was necessary for the State to prove that the appellant *knowingly* had the drug in his possession. It is to be noted that the indictment did not allege that the appellant *wilfully* or *knowingly* had the cannabis in his possession, but alleged that he illegally possessed the same. The statute under which he was charged, Art. 27, sec. 346, (Code 1951), makes it "unlawful for any person to * * * possess, * * * any narcotic drug, except as authorized in this sub-title." [1]

The type of offense that is guarded against by this statute has been included by, at least, one author in what he termed

---

1. Sec. 367 provides that the burden of proof shall be upon the defendant to establish any exception, excuse, exemption, etc., contained in the sub-title. The appellant claims no exception, etc., his only contention is that he did not know the package contained cannabis.

"Public Welfare Offenses." [2]  The statute was properly enacted under the general police powers of this State; it is a mandate of the legislature designed to promote the public health, the public morals, the public safety and the general welfare of the State.  It requires no elaborate discussion nor lengthy argument to demonstrate that if our citizenry, young and old, become addicted to the use of narcotic drugs, the public health, morals, safety and welfare will be directly and seriously affected.  We think the fact is so generally accepted that repeated doses of narcotic drugs are extremely deleterious to the moral qualities and the physical structures of human beings, it is unnecessary to discuss the point further.

Under an indictment for a violation of such a statute as is here involved it is not necessary to allege or prove the *scienter* unless, by the statute, it is made an ingredient that the thing prohibited shall be *knowingly* or *wilfully* done, to make the act an offense.  *Carroll v. State,* 63 Md. 551, 554, 3 A. 29.  In that case, a dealer in liquors was found guilty of unlawfully selling liquor to a minor, although the sale was made by the defendant's barkeeper, during the absence of the defendant, without his knowledge and contrary to his express instructions.  This Court said:

> "Where an act, if done knowingly, would be *malum in se,* ignorance, which excludes the idea of intentional wrong, it would seem will excuse; but Mr. Greenleaf says, in sec. 21 of Vol. 3, 'where a statute commands that an act be done or omitted, which, in the absence of such statute, might have been done or omitted without culpability, ignorance of the fact or state of things contemplated by the statute, it seems, will not excuse its violation.' "

This case followed the earlier case of *State v. Balto. & Susq. Steam* Co., 13 Md. 181, which dealt with a statute that made it unlawful for any slave to be transported on a steamboat

2. *Sayre, Public Welfare Offenses,* 33 Col. L. Rev. 55, 56; *Hall, General Principles of Criminal Law,* p. 281.

without the written permission of the slave's owner. It was there held that the owners of a steamboat could not escape from the penalty of the statute by showing that neither they, nor their agents, had any knowledge that the slave was aboard their vessel, that they had no intention to violate the law, and had used reasonable diligence to prevent such persons from coming on board. This case was cited and approved in *C., B. & Q. Ry. v. United States,* 220 U. S. 559, 578.

In the later case of *Ford v. State,* 85 Md. 465, 37 A. 172, this Court considered a penal statute that made it a crime for any person merely to have in his possession lottery slips. In sustaining a conviction the question of whether or not it violated either the Federal or State constitutions was considered and determined. The statute was upheld as a legitimate exercise of the police power in the face of the contention that its provisions arbitrarily created an indictable offense where there was not only a total absence of criminal intent, but a complete ignorance on the part of the traverser as to what the lists or slips were. This case was cited, with approval, by us this year in the case of *Maryland Racing Comm. v. McGee,* 212 Md. 69, 76, 128 A. 2d 419. See also *Rucker v. State,* 196 Md. 334, 340, 76 A. 2d 572; *Yanch v. State,* 201 Md. 296, 300, 93 A. 2d 749; *Le Faivre v. State,* 208 Md. 52, 66, 116 A. 2d 368, 118 A. 2d 639; *Haskin v. State,* 213 Md. 127, 130, 131 A. 2d 282; 3 *Greenleaf, Evidence,* (15th Ed.), sec. 21, Note.

In *United States v. Dotterweich,* 320 U. S. 277, 280-281, the Supreme Court of the United States made a similar ruling under the Federal Food, Drug, and Cosmetic Act. And in *Peachie v. State,* 203 Md. 239, 243, 100 A. 2d 1, this Court held that it was not necessary in order to sustain a conviction of possession of narcotics, to prove ownership in the sense of title.

Of course, in this type of case the trial court, in considering the question of punishment, may give due and full consideration to any lack of guilty knowledge on the part of a convicted person, or any other proper subject that tends to mitigate the offense.

We hold in this case that the statute prohibits the possession of narcotic drugs, except as therein authorized; that it was unnecessary for the State to allege or prove that the appellant knowingly or wilfully possessed the marijuana; that the evidence clearly and certainly established the fact that the appellant had the cannabis in his possession in an unauthorized manner, and he was, therefore, properly convicted.

*Judgments affirmed, with costs.*