547 A.2d 1041

**Leonard C. DAWKINS**

v.

**STATE of Maryland.**

**No. 1, Sept. Term, 1987.**

Court of Appeals of Maryland.

Oct. 10, 1988.

John L. Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for petitioner.

John S. Bainbridge, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, McAULIFFE and ADKINS, JJ., and JAMES F. COUCH, Jr., Associate Judge of the Court of Appeals of Maryland (retired) Specially Assigned.

ELDRIDGE, Judge.

The issue in this case is whether "knowledge" is an element of the offenses of possession of a controlled dangerous substance and possession of controlled parapherna-

lia under Maryland Code (1957, 1987 Repl.Vol.), Art. 27, § 287(a) and (d).[1]

## I.

The defendant, Leonard C. Dawkins, was arrested in a hotel room in Baltimore City and charged with possession of heroin and possession of controlled paraphernalia. At the defendant's jury trial in the Circuit Court for Baltimore City, the police testified that when they entered the hotel room, the defendant held a tote bag in his hand. The police proceeded to search the tote bag, and they found in it narcotics paraphernalia and a bottle cap containing heroin residue. The police also testified that men's clothes were found in the bag.

The defendant testified that the tote bag belonged to his girlfriend, Ms. Demistrius Sharp, and that Ms. Sharp had asked him to carry the bag to her hotel room. The defendant further testified that he was unaware of the contents of the bag at the time. According to the defendant, he had only been in the room a few minutes when the police knocked on the door. He did not open the door, nor did the police enter at that time. They returned and entered the room twenty minutes later. The defendant testified that when the police entered the room, the tote bag was on a table and not in the defendant's possession. He also testified that when the police searched the bag, they found women's clothing rather than men's clothing. In addition, at the trial Ms. Sharp produced a receipt for the purchase of the tote bag, and she indicated that she owned the bag.

---

1. Art. 27, § 287, provides in pertinent part:
   "Except as authorized by this subheading, it is unlawful for any person:
   (a) To possess or administer to another any controlled dangerous substance, unless such substance was obtained directly, or pursuant to a valid prescription or order from a practitioner, while acting in the course of his professional practice.
   *     *     *     *     *     *
   "(d) To possess or distribute controlled paraphernalia...."

Following the evidentiary portion of the trial, the court instructed the jury on the elements of possession under § 287(a) and (d). The instruction omitted any reference to knowledge being an element of the offenses. Before the jury retired to deliberate, defense counsel objected to the instructions on grounds unrelated to the issue before us.[2] After the start of its deliberations, the jury sought reinstruction on the elements of possession. At that time, defense counsel asked the judge to instruct the jury that knowledge is an element of possession. The judge declined, ruling that knowledge is not an element of the possession offenses under § 287. The judge's reinstruction made no reference to knowledge, and it was objected to on this ground.

The jury convicted the defendant on both counts. The court subsequently sentenced the defendant to a total of five years imprisonment: four years on the possession of controlled substances charge and one year, to be served consecutively, on the possession of controlled paraphernalia charge.

The Court of Special Appeals affirmed the conviction in an unreported opinion, holding that the failure to give the requested instruction was not error because proof of *scienter* is not required. The defendant filed a petition for a writ of certiorari, presenting the question of whether knowledge is an element of the § 287 offenses. The State filed a cross-petition for a writ of certiorari, claiming that the instruction issue was not properly preserved for appellate review. We granted both petitions.

### II.

■ Initially we reject the State's argument that the jury instruction issue is not properly before this Court. The

---

**2.** Defense counsel objected to the trial judge's "constructive possession" instruction. Counsel asked the judge to instruct the jury that the absence of needlemarks on the defendant's arms indicated that he did not constructively possess the heroin. The judge refused the requested instruction.

State argues that, because defense counsel did not object to the original jury instructions on the ground that knowledge is an element of the offenses, the point is not preserved for appellate review under Maryland Rule 4–325. According to the State, defense counsel's request for an instruction and his objection at the time the jury sought reinstruction came too late. The State's argument is flawed for two reasons.

■ First, we believe that, under the circumstances, the defendant's objection to the supplemental instructions was timely. Rule 4–325(a), in addition to requiring that the trial court instruct the jury at the conclusion of evidence and before closing arguments, also authorizes the court to give supplemental instructions at a later time when appropriate.[3] In this case the trial court did give supplementary instructions; the defendant objected to them, and it is the supplementary instructions which are challenged on appeal. Rule 4–325(e) states that, in order to preserve an instruction issue for appellate review, the party must object to the instruction or failure to instruct "promptly after the court instructs the jury...."[4] *See Johnson v. State,* 310 Md. 681, 684–689, 531 A.2d 675 (1987). Nothing in the language of Rule 4–325(e) requires, where there are supplemental instructions, that the objection nonetheless must always be made after the initial instructions. If the instruction

---

**3.** Rule 4–325(a) provides as follows:
"(a) When Given.—The court shall give instructions to the jury at the conclusion of all the evidence and before closing arguments and may supplement them at a later time when appropriate. In its discretion the court may also give opening and interim instructions."

**4.** Rule 4–325(e) provides as follows:
"(e) Objection.—No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object."

claimed to be error occurs during supplemental instructions, and the party promptly objects after the supplemental instructions, Rule 4–325(e) appears to entitle that party to challenge the supplemental instructions on appeal. We have so applied the rule. *Battle v. State*, 287 Md. 675, 678–679, 414 A.2d 1266 (1980). *See also People v. Lewis*, 116 A.D.2d 16, 499 N.Y.S.2d 709, 711 (1986).

■ Second, even if the defendant's objection were not timely, Rule 4–325(e) authorizes the Court of Special Appeals, in its discretion, to reach the merits of an instruction issue despite a party's failure at trial to object. In this case the Court of Special Appeals, exercising its discretion under the Rule, did reach the merits of the issue and decided that knowledge was not an element of the offenses. Under the circumstances, the only question under Rule 4–325(e) that can properly be raised before this Court is whether the Court of Special Appeals abused its discretion in reaching the merits. *State v. Hutchinson*, 287 Md. 198, 202–204, 204 n. 1, 208, 411 A.2d 1035 (1980). *See Squire v. State*, 280 Md. 132, 134, 368 A.2d 1019 (1977); *Dempsey v. State*, 277 Md. 134, 142, 355 A.2d 455 (1976). In the case at bar, the State makes no argument that the Court of Special Appeals abused its discretion. Moreover, under the circumstances, it is clear that there was no abuse of discretion.

### III.

### A.

■ At common law, a crime occurred only upon the concurrence of the individual's act and his guilty state of mind. *See, e.g., Morissette v. United States*, 342 U.S. 246, 251–252, 72 S.Ct. 240, 243–244, 96 L.Ed. 288, 294 (1951). As Bishop stated, "[t]here can be no crime, large or small, without an evil mind. In other words, punishment is the sequence of wickedness.... It is, therefore, a principle of our legal system ... that the essence of the offense is the wrongful intent, without which it cannot exist." 1 Bishop's Crim. Law, § 287 (9th ed. 1923).

Nevertheless, during the nineteenth century, legislative bodies both in this country and in England began to create strict liability criminal offenses designed to protect the public health and welfare. As the Supreme Court of the United States explained in *Morissette v. United States, supra,* 342 U.S. at 254, 72 S.Ct. at 245, this trend paralleled the rise of the industrial revolution:

"Congestion of cities and crowding of quarters called for health and welfare regulations undreamed of in simpler times. Wide distribution of goods became an instrument of wide distribution of harm when those who dispersed food, drink, drugs and even securities, did not comply with reasonable standards of quality, integrity, disclosure and care. Such dangers have engendered increasingly numerous and detailed regulations which heighten the duties of those in control of particular industries, trades, properties or activities that affect public health, safety or welfare."

*See* Sayre, *Public Welfare Offenses,* 33 Colum.L.Rev. 55, 67–70 (1933). *See also Jenkins v. State,* 215 Md. 70, 74–75, 137 A.2d 115 (1957).

"Public Welfare Offenses" are generally regulatory in nature. The earliest cases involved liquor and adulterated milk. *See, e.g., Barnes v. State,* 19 Conn. 398 (1849); *Commonwealth v. Boynton,* 2 Allen 160 (Mass.1861). Later cases expanded the doctrine to apply to violations of traffic regulations and motor vehicle laws, sales of misbranded articles, and sales or purchases in violation of anti-narcotics laws. *See,* Sayre, *supra,* 33 Colum.L.Rev. at 73. These offenses commonly involve light fines or penalties. *Morissette v. United States, supra,* 342 U.S. at 256, 72 S.Ct. at 246. As Sayre notes, "... the penalty in such cases is so slight that the courts can afford to disregard the individual in protecting the social interest." Sayre, *supra,* 33 Colum.L.Rev. at 70. *See also, Walker v. State,* 356 So.2d 672, 673 (Ala.1977); *People v. Farley,* 33 Cal.App.3d Supp. 1, Supp. 5, 109 Cal.Rptr. 59, 61 (1973); *Speidel v. State.* 460 P.2d 77, 79 (Alaska 1969); Model Penal Code

§ 2.05, Explanatory Note and Comment (Official Draft and Revised Commentaries 1962) ("The theory of the Code is that noncriminal offenses, subject to no severer sanction than a fine, may be employed for regulatory purposes on the basis of strict liability.") Additionally, the purpose of the penalty is to regulate rather than to punish behavior. *See, People v. Vogel,* 46 Cal.2d 798, 801 n. 2, 299 P.2d 850, 853 n. 2 (1956). While liability is imposed regardless of the defendant's state of mind, the defendant is generally in a position to prevent the violation from occurring. *Morissette, supra,* 342 U.S. at 256, 72 S.Ct. at 246.

### B.

Turning to the statutes in the instant case, § 287(a) prohibits possession of controlled substances. Section 287(d) prohibits possession of controlled paraphernalia with the intent to use the paraphernalia. Violation of either § 287(a) or § 287(d) is a misdemeanor. Each offense is punishable by up to four years in prison or a fine of up to $25,000 or both. § 287(e).

Neither § 287(a), nor § 287(d), nor § 277(s) which defines "possession" for purposes of § 287,[5] contain language indicating whether *scienter* is an element of the § 287 offenses. Adopted in 1970, the Maryland Controlled Dangerous Substances Act is modeled on the Uniform Controlled Substances Act. *See* 9 U.L.A. 187 (1979).[6] While substantially

---

**5.** Section 277(s) provides as follows:
  "(s) 'Possession' shall mean the exercise of actual or constructive dominion or control over a thing by one or more persons."

**6.** To date, 48 states have adopted the Uniform Controlled Substances Act. *See,* Ala. Code §§ 20–2–1 to 20–2–93 (1975); Alaska Stat. §§ 11.-71.010 to 11.71.900, 17.30.010 to 17.30.900 (1962); Ariz.Rev.Stat.Ann. §§ 36–2501 to 36–2553 (1956); Ark.Stat.Ann. §§ 5–64–101 to 5–64–906; Cal. Health & Safety Code §§ 11000 to 11651 (1975); Colo.Rev.Stat. §§ 12–22–301 to 12–22–322 (1985); Conn.Gen.Stat.Ann. §§ 21a–240 to 21a–308 (1987); Del. Code Ann. tit. 16, §§ 4701 to 4796 (1983); D.C. Code Ann. §§ 33–501, to 33–567 (1981); Fla.Stat.Ann. §§ 893.1–893.15 (1976); Ga. Code Ann. §§ 16–13–20 to 16–13–56; Haw.Rev.Stat. §§ 329–1 to 329–58 (1985); Idaho Code §§ 37–2701 to 37–2751 (1977);

adopting the text of the Uniform Act, the Maryland General Assembly made numerous changes in the Maryland Act. One difference is between the Uniform Act § 401, prohibiting possession, and § 287 of the Maryland Code. The Uniform Act only proscribes knowing and intentional possession, while the Maryland act is silent as to this element.

In surveying the law of other states that have adopted the Uniform Controlled Substances Act, we note that the overwhelming majority of states, either by statute or by judicial decision, require that the possession be knowing. In addition to Maryland, the statutes of fifteen other states plus the District of Columbia are silent as to the knowledge element. Even though the statutes are silent as to a *scienter* requirement, most of these jurisdictions have, by judicial decision, determined that knowledge is an element

---

Ill.Ann.Stat. ch. 56½, ¶ 1100 to 1603 (Smith–Hurd 1985); Ind. Code Ann. §§ 35–48–1–1 to 35–48–4–14 (Burns 1985); Iowa Code Ann. §§ 204.101 to 204.602 (1987); Kan.Stat.Ann. §§ 65–4101 to 65–4140 (1985); Ky.Rev.Stat.Ann. §§ 218A.010 to 218A.990 (Michie 1982); La. Rev.Stat.Ann. §§ 40:961 to 40:995 (1977); Me.Rev.Stat.Ann. tit. 17–A §§ 1101 to 1116, tit. 22, §§ 2361 to 2387 (1983); Mass.Gen.Laws Ann. Ch. 94C, §§ 1 to 48 (1985); Mich.Comp.Laws Ann. §§ 333.7101 to 333.7545 (1980); Minn.Stat.Ann §§ 152.01 to 152.20 (1988); Miss. Code Ann. §§ 41–29–101 to 41–29–185 (1972); Mo.Rev.Stat. §§ 195.-010 to 195.320 (1968); Mont.Code Ann. §§ 50–32–101 to 50–32–405 (1987); Neb.Rev.Stat. §§ 28–401 to 28–445 (1943); Nev.Rev.Stat. §§ 453.011 to 453.361 (1986); N.J.Stat.Ann §§ 24:21–1 to 24:21–53 (1988); N.M.Stat.Ann. §§ 30–31–1 to 30–31–41 (1978); N.Y.Pub.Health §§ 3300–3396 (1987); N.C.Gen.Stat. §§ 90–86 to 90–113.8 (1987); N.D. Cent.Code §§ 19–03.1–01 to 19–03.1–43 (1981); Ohio Rev. Code Ann. §§ 3719.01 to 3719.99 (1980); Oka.Stat.Ann. tit. 63 §§ 2–101 to 2–610 (1984); Or.Rev.Stat. §§ 475.005 to 475.285, 475.992 to 475.995 (1987); Pa.Stat.Ann. tit. 35, §§ 780–101 to 780–144 (1977); R.I.Gen.Laws §§ 21–28–1.01 to 21–28–6.02 (1956); S.C. Code Ann. §§ 44–53–110 to 44–53–590 (1976); S.D. Codified Laws Ann. §§ 34–20B–1 to 34–20B–114 (1986); Tenn. Code Ann. §§ 39–6–401 to 39–6–419, 53–11–301 to 53–11–414 (1983); Tex. Code Ann. §§ 4476–15 (Vernon 1976); Utah Code Ann. §§ 58–37–1 to 58–37–19 (1953); Va. Code Ann. §§ 54–524.1 et seq. (1950); Wash.Rev.Code §§ 69.50–101 to 69.50–607 (1985); W.Va. Code §§ 60A–1–101 to 60A–6–605 (1984); Wis.Stat.Ann. §§ 161.001 to 161.62 (1986); Wyo.Stat. §§ 35–7–1001 to 35–7–1057 (1977).

of the crime of possession.[7]

For example, the Supreme Court of Alabama in *Walker v. State, supra*, 356 So.2d at 673–674, held that knowledge was an element of the crime of possession under the Alabama Controlled Substances Act. The court reasoned that this statute differed from the typical public welfare statute, largely because of the severe penalty imposed. *Id.* at 673.

Similarly, the California Supreme Court held that the elements of the possession offense include knowledge of the presence and character of the drug. *People v. Williams*, 5 Cal.3d 211, 215, 95 Cal.Rptr. 530, 532, 485 P.2d 1146, 1148 (1971). *See People v. Camp*, 104 Cal.App.3d 244, 247–248, 163 Cal.Rptr. 510, 512, *cert. denied*, 449 U.S. 960, 101 S.Ct. 373, 66 L.Ed.2d 227 (1980). The Court of Appeals for the District of Columbia, in *United States v. Weaver*, 458 F.2d 825, 826 (D.C.Cir.1972), determined that, despite the statute's silence, it only applied to "knowing" possession. *See also, Stewart v. United States*, 395 A.2d 3, 6 (D.C.1978).[8]

The Supreme Court of Kansas, in *State v. Flinchpaugh*, 232 Kan. 831, 659 P.2d 208 (1983), adopted a definition of "possession" that included a knowledge element. *See also, State v. Metz*, 107 Kan. 593, 596, 193 P. 177, 178 (1920) ("The elements of this possession are: First, the mental attitude of the claimant, the intent to possess ...; and, second, the effective realization of this attitude").

The North Carolina Supreme Court, in *State v. Harvey*, 281 N.C. 1, 187 S.E.2d 706 (1972), held that possession includes "both the power and intent to control its disposition

---

**7.** Only North Dakota and Washington have determined that knowledge is not an element of the offense of possession of controlled substances. *See State v. Rippley*, 319 N.W.2d 129 (N.D.1982), and *State v. Cleppe*, 96 Wash.2d 373, 635 P.2d 435 (1981), *cert. denied*, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982).

**8.** Other states holding that a "knowledge" requirement is implicit in the statute include Alaska, Arkansas, and Minnesota. *See Judd v. State*, 482 P.2d 273 (Alaska 1971); *Wilson v. State*, 290 Ark. 397, 720 S.W.2d 292 (1986); *State v. Florine*, 303 Minn. 103, 226 N.W.2d 609 (1975).

or use." 281 N.C. at 12, 187 S.E.2d at 714. *See State v. Davis,* 20 N.C.App. 191, 201 S.E.2d 61 (1973), *cert. denied,* 284 N.C. 618, 202 S.E.2d 274 (1974); *State v. Rogers,* 32 N.C.App. 274, 278, 231 S.E.2d 919, 922 (1977). Other cases holding that the statutory words "possess" or "possession" signify "knowledge" include *State v. Harris,* 159 Conn. 521, 531, 271 A.2d 74, 79 (1970), *cert. denied,* 400 U.S. 1019, 91 S.Ct. 578, 27 L.Ed.2d 630 (1971) (" ' "Possess" as used in criminal statutes ordinarily signifies an intentional control of a designated thing accompanied by a knowledge of its character' "); *Thomas v. State,* 153 Ga.App. 686, 689, 266 S.E.2d 335, 337 (1980); *Sindrich v. State,* 322 So.2d 589, 591 (Fla.App.1975); *State v. Shanks,* 124 Wis.2d 216, 236, 369 N.W.2d 743, 754 (1985).

Under the Maryland statute, § 277(s) defines "possession" as "the exercise of actual or constructive *dominion or control* over a thing by one or more persons." (Emphasis added). Some courts, in analyzing similar language, construe "dominion and control" to require "knowledge." [9] For example, in *State v. Burns,* 457 S.W.2d 721 (Mo.1970), the Missouri Supreme Court determined that "possession"

---

**9.** The Maryland Court of Special Appeals has previously indicated that "dominion and control" includes knowledge on the defendant's part of the presence of the narcotics. For example, in *Wilkins v. State,* 11 Md.App. 113, 273 A.2d 236 (1971), police found narcotics under defendant's bed. The court stated that " 'where one has exclusive possession of a home or apartment in which prohibited narcotics are found, it may be inferred, even in the absence of other incriminating evidence, that *such person knew of the presence of the narcotics and had control of them.'* " 11 Md.App. at 127, 273 A.2d at 243 (emphasis added). Similarly, in *Davis v. State,* 9 Md.App. 48, 262 A.2d 578 (1970), the defendant was convicted of possession of narcotics. The defendant shared the apartment with a woman charged with selling narcotics. Defendant resided at the apartment two nights per week and had an intimate relationship with the co-lessee. The court, in reversing his conviction, noted that no evidence indicated where the narcotics were kept or whether the defendant was present when the sale occurred. The court stated, "nor was there any evidence that Davis *knew* Green had marihuana on the premises at that time or was using the apartment for the purpose of keeping and/or selling that prohibited narcotic drug." 9 Md.App. at 55, 262 A.2d at 582 (emphasis added).

included a knowledge element. It reasoned that in order to "control" an object, the defendant must know of its existence. The court stated: "Knowledge of the existence of the object is essential to physical control thereof with the intent to exercise such control and such knowledge must necessarily precede the intent to exercise or the exercise of such control." 457 S.W.2d at 724.

We find persuasive the reasoning of the above-reviewed cases. In particular, we agree that an individual ordinarily would not be deemed to exercise "dominion or control" over an object about which he is unaware. Knowledge of the presence of an object is normally a prerequisite to exercising dominion and control.

Moreover, in addition to the definition found in § 277(s), the statutory scheme strongly indicates an intention on the part of the General Assembly to require *scienter* as an element of the § 287 offenses. Section 287(d) proscribes possession of paraphernalia. Possession, however, is only unlawful if the person possesses the paraphernalia with the "intention to use [it] ... for purposes of illegally administering any controlled dangerous substance." An individual can hardly intend to use an object in his possession if he is unaware that he possesses it. Thus the statutory scheme implies a "knowing" possession on the part of the accused.[10]

## C.

The State, in contending that §§ 287(a) and 287(d) should be construed as containing no requirement of *scienter*,

---

**10.** Most states addressing the issue of possession of controlled substances hold that the accused must not only know of the presence of the substance but also of the general character of the substance. *See, e.g., State v. Alexander*, 471 A.2d 216 (R.I.1984); *Wise v. State*, 654 P.2d 116 (Wyo.1982); *State v. Barber*, 635 S.W.2d 342 (Mo.1982); *Clodfelter v. Commonwealth*, 218 Va. 619, 238 S.E.2d 820 (1977); *State v. Reardon*, 172 Conn. 593, 376 A.2d 65 (1977); *State v. Florine*, 303 Minn. 103, 226 N.W.2d 609 (1975); *People v. Williams*, 5 Cal.3d 211, 95 Cal.Rptr. 530, 485 P.2d 1146 (1971); *State v. Kietzke*, 85 S.D. 502, 186 N.W.2d 551 (1971); *Overton v. State*, 78 Nev. 198, 370 P.2d 677 (1962). *See also*, Me.Rev.Stat.Ann. tit. 17–A § 1107(1) (1964). *Contra Johnson v. State*, 343 So.2d 110 (Fla.1977).

chiefly relies upon this Court's decision in *Jenkins v. State, supra*, 215 Md. 70, 137 A.2d 115 (1957).

Prior to the adoption of the Uniform Controlled Substances Act in 1970, Maryland law incorporated the Uniform Narcotic Drug Act which, among other things, prohibited possession of narcotics. *Jenkins v. State, supra*, concerned the earlier statute. Although both Acts are aimed at controlling the illegal use of controlled substances, the statutory schemes of the two Acts are distinct. The approach taken and the language used varies from one to the other.

In 1957, this Court addressed the issue of whether the defendant's knowledge of the contents of a package he possessed constituted an element of the crime under the former statute. In reaching the conclusion that it did not, the Court, *inter alia*, relied on the notion that possession of narcotics constituted a "public welfare offense" as well as on the language of the statute. 215 Md. at 74–75, 137 A.2d at 117.

Two factors affect the application of *Jenkins* to § 287 as enacted in 1970. First, *Jenkins* was decided under a statute that no longer exists. Both former Act and § 287(a) prohibit the possession of narcotics without using any express language concerning a knowledge or intent element. The former statute, however, was enacted in 1935, a time of "... rapid growth of a large body of offenses punishable without proof of a guilty intent...." Sayre, *supra*, at 79. Section 287(a), however, was enacted in 1970, a time when the concepts incorporated in the Model Penal Code were more prevalent. The Model Penal Code expresses the contemporary view that disfavors strict liability offenses. *Model Penal Code* § 2.05, Explanatory Note and Comment (Official Draft and Revised Commentaries 1962) ("This section makes a frontal attack on ... strict liability in the penal law, whenever the offense carries the possibility of criminal conviction, for which a sentence of probation or imprisonment may be imposed.")

Second, possession of controlled dangerous substances, both in 1970 and today, does not fall within the category of a mere "public welfare" or "regulatory" offense. *Cf., Jenkins, supra* at 74–75, 137 A.2d at 117. *See also* Model Penal Code § 2.05, Explanatory Note and Comment (Official Draft and Revised Commentaries 1962); *Walker v. State, supra,* 356 So.2d at 373; *State v. Self,* 492 So.2d 319, 320 (Ala.1986); *People v. Farley, supra,* 109 Cal.Rptr. at 61; *Speidel v. State,* 460 P.2d 77, 78–79 (Alaska 1969). *See Liparota v. United States,* 471 U.S. 419, 432–433, 105 S.Ct. 2084, 2092, 85 L.Ed.2d 434, 444–445 (1985).

Today, the prohibition against possessing a controlled dangerous substance, such as heroin, cocaine, etc., is regarded as a most serious offense, particularly in light of the association between illegal drugs and other crime. *See, e.g.,* Setterberg, *Drugs and Justice in Oakland,* 6 Cal. Law. 37 (May 1986); *Drugs and Crime: A Survey and Analysis of the Literature,* Department of Justice, National Institute of Justice (May 1980). Not only do drug users engage in substantial amounts of "income-generating" crime (including theft, burglary and robbery), *see Drugs and Crime, supra* at 59, but the drug trafficking occupation, in general, repeatedly involves violent crimes, including murder. The penalty for the possession offenses reflects the seriousness of the crime. An individual may be sentenced for up to four years in prison or receive a $25,000 fine or both. § 287(e). The purpose of imposing a penalty upon possession of narcotics is to punish and deter immoral behavior having serious consequences, rather than merely to regulate conduct.

In accord with the overwhelming majority of other jurisdictions, we hold that "knowledge" is an element of the offenses charged in this case. The accused, in order to be found guilty, must know of both the presence and the general character or illicit nature of the substance. Of course, such knowledge may be proven by circumstantial evidence and by inferences drawn therefrom. Neverthe-

less, the defendant Dawkins was entitled to an instruction that knowledge is an element.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE TO THE CIRCUIT COURT OF BALTIMORE CITY FOR A NEW TRIAL. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.