*The Board of Liquor License Commissioners for Baltimore City v. Steven Kougl, et al.*,
No. 43, September Term, 2016, Opinion by Adkins, J.

**ADMINISTRATIVE LAW — LIQUOR BOARD REGULATIONS — STRICT
LIABILITY OFFENSES:** The Rules and Regulations for the Board of Liquor License
Commissioners for Baltimore City impose strict liability on licensees for conduct violating
Rules 4.17(a) and (b), which regulate sexual conduct and obscenity on a licensee's
premises, and Rule 4.18, which prohibits illegal activity on a licensee's premises.

Circuit Court for Baltimore City
Case No.:  24-C-14-004279
Argued: December 6, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 43

September Term, 2016

THE BOARD OF LIQUOR LICENSE
COMMISSIONERS FOR BALTIMORE CITY

v.

STEVEN KOUGL, et al.

Barbera, C.J.
Greene
Adkins
McDonald
Hotten
Getty
Raker, Irma S. (Senior Judge,
Specially Assigned),

JJ.

Opinion by Adkins, J.

Filed: February 17, 2017

The Board of Liquor License Commissioners for Baltimore City ("the Liquor Board") charged Respondent Steven Kougl and his company, Kougl, Inc., with violating provisions of the Rules and Regulations for the Board of Liquor License Commissioners for Baltimore City ("the Liquor Board Rules" or "the Rules") that regulate sexual conduct and prohibit illegal activity on a licensee's premises. The Liquor Board found that Kougl violated these Rules and ordered a 30-day suspension of his liquor license. Kougl argues that the Rules require actual or constructive knowledge on the part of the licensee, and, therefore, he did not violate them when his employee solicited prostitution and exposed her breasts without his knowledge. We hold that the Liquor Board Rules at issue impose strict liability on licensees for prohibited conduct that occurs on their premises.

## FACTS AND LEGAL PROCEEDINGS

In April 2013, Detective Fletcher Jackson of the Baltimore City Police Department's Special Enforcement Section, Vice Division, conducted an undercover investigation at Club Harem ("the Club"), an adult entertainment establishment[1] owned by Respondent Steven Kougl.[2] During his investigation, one of the Club's employees, Jamaica Brickhouse, approached Detective Jackson and engaged him in conversation. After introducing herself, Brickhouse exposed her breasts to Detective Jackson and invited

---

[1] We use the term "adult entertainment establishment" for description only. Whether Kougl held an adult entertainment license at the time of the violations is not at issue in this case.

[2] Steven Kougl owns Kougl, Inc., also a party to this action, which does business under the Club Harem name. Both Kougl and Kougl, Inc. are licensed by the Board of Liquor License Commissioners for Baltimore City ("the Liquor Board"). As used in this opinion, "Kougl" refers to both Steven Kougl and his company, Kougl, Inc.

him to touch them. He complied. Detective Jackson then asked Brickhouse if her breasts "tast[ed] as good as they look[ed]." At this point, Brickhouse proposed a lap dance or going to "the VIP" where they could "do whatever" so he could "find out." Detective Jackson asked if "whatever" meant sexual intercourse, and Brickhouse confirmed that it did. She also clarified that it would cost $170 for the VIP room plus a tip for her services. Detective Jackson offered a $100 tip, and Brickhouse accepted. But no money was exchanged because Brickhouse went on stage to perform and Detective Jackson left the Club. She was charged with prostitution about eight months later.[3]

In July 2014, approximately 15 months after the incident, the Liquor Board charged Kougl with violations of three Liquor Board Rules. Specifically, it charged him with violations of: (1) Rule 4.17(a), which prohibits the solicitation of prostitution on a licensee's premises; (2) Rule 4.17(b), which prohibits indecent exposure on a licensee's premises; and (3) Rule 4.18, which prohibits the violation of federal, state, and local laws on a licensee's premises.[4] After a hearing on July 17, 2014, the Liquor Board found that Kougl violated all three Rules and imposed a 30-day suspension of his liquor license.[5]

---

[3] The State nolle prossed these charges on January 6, 2014.

[4] At this time, the Liquor Board also charged Kougl with a violation of Rule 4.17(a) of the Rules and Regulations for the Board of Liquor License Commissioners for Baltimore City ("the Liquor Board Rules" or "the Rules") for an incident that occurred on November 11, 2013. At the July 2014 hearing, however, the Liquor Board declined to pursue this charge.

[5] For each of the charges, Kougl was found guilty by a 2-1 vote. The Liquor Board's then-Chairman Thomas Ward and Commissioner Harvey E. Jones voted guilty on all three charges. Commissioner Dana P. Moore voted not guilty.

Kougl petitioned for judicial review of the decision in the Circuit Court for Baltimore City. The Circuit Court affirmed.

Kougl appealed to the Court of Special Appeals. He argued that because he had no knowledge of Brickhouse's prohibited activity, he had not violated Rules 4.17(a), 4.17(b), or 4.18.[6] He claimed that the Rules do not impose strict liability. In a published opinion, the court reversed. It held that the plain meaning of the words "suffer," "permit," and "allow," as used in Rules 4.17 and 4.18 "necessarily require that some level of knowledge by the licensee must be established by the evidence." *Kougl v. Bd. of Liquor License Comm'rs for Balt. City*, 228 Md. App. 314, 330 (2016) (citation and internal quotation marks omitted). The court further held that this knowledge requirement may be satisfied by evidence of actual or constructive knowledge. *Id.* at 331. In defining actual knowledge, the intermediate appellate court explained that there are two types: (1) "actual awareness or an actual belief that a fact exists" and (2) "deliberate ignorance" or "willful blindness." *Id.* (citation omitted). Because there was no evidence of Kougl's actual or constructive knowledge of Brickhouse's conduct, the court concluded that the Liquor Board erred in finding him guilty of violating the Rules at issue.

The Liquor Board noted a timely appeal. We granted *certiorari* to consider the following question:

---

[6] Kougl also argued that the Liquor Board's decision was not supported by sufficient findings of fact and conclusions of law to permit judicial review. *Kougl v. Bd. of Liquor License Comm'rs for Balt. City*, 228 Md. App. 314, 320 (2016). The Court of Special Appeals disagreed. *Id.* at 324. Neither party has appealed this portion of the court's decision.

3

> Did the Liquor Board correctly interpret its [R]ules to impose upon licensees strict liability for sexual display, performance, or illegal activity conducted on licensed premises, where the pertinent portions of the [R]ules contain no language limiting a licensee's responsibility to situations where the licensee has actual or constructive knowledge of the offending conduct?

Because we answer this question in the affirmative, we shall reverse the judgment of the Court of Special Appeals.

## STANDARD OF REVIEW

By statute, the General Assembly authorized local liquor boards to promulgate regulations advancing Maryland Code (1957, 2016 Repl. Vol.), § 1-201 of the Alcoholic Beverages Article ("AB"), which aims "[t]o obtain respect and obedience to law and to foster and promote temperance" in furtherance of "the protection, health, welfare, and safety of the people of the State." AB § 1-201(a)(1)(i)–(ii), (a)(3). The statute specifically authorizes the Liquor Board to "adopt regulations to carry out this article." Md. Code (1957, 2016 Repl. Vol.), AB § 12-210(a). In 1998, the Liquor Board promulgated revised Liquor Board Rules. We are tasked with reviewing its interpretation of these regulations.

In Maryland, judicial review of an administrative agency action "is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel Serv., Inc. v. People's Counsel for Balt. Cty.*, 336 Md. 569, 577 (1994). Although judicial review of an agency's factual findings is "quite narrow," "it is always within our prerogative to determine whether an agency's conclusions of law are correct." *Adventist Health Care, Inc. v. Md. Health Care Comm'n*,

4

392 Md. 103, 120–21 (2006) (citations and internal quotation marks omitted). If an agency's conclusion is based on an error of law, it will not be upheld. *Hoyle v. Bd. of Liquor License Comm'rs for Balt. City*, 115 Md. App. 124, 129 (1997).

But "[e]ven with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency." *Finucan v. Md. Bd. of Physician Quality Assurance*, 380 Md. 577, 590 (2004) (citation omitted). Appellate courts should ordinarily give "considerable weight" to "an administrative agency's interpretation and application of the statute which the agency administers." *Md. Aviation Admin. v. Noland*, 386 Md. 556, 572 (2005). In this regard, "the expertise of the agency in its own field of endeavor is entitled to judicial respect." *Finucan*, 380 Md. at 590 (citations omitted). An agency is granted further deference when it interprets a regulation it promulgated, rather than a statute enacted by the Legislature. *Md. Comm'n on Human Relations v. Bethlehem Steel Corp.*, 295 Md. 586, 593 (1983). "Because an agency is best able to discern its intent in promulgating a regulation, the agency's expertise is more pertinent to the interpretation of an agency's rule than to the interpretation of its governing statute." *Id.*

## DISCUSSION

The Liquor Board argues that Liquor Board Rules 4.17(a), 4.17(b), and 4.18 impose strict liability on licensees for violations that occur on licensed premises. Therefore, it maintains, Kougl violated the Rules regardless of whether he had actual or constructive knowledge of his employee's conduct. The Liquor Board contends that the plain language meaning of "permit," "suffer," and "allow" do not require knowledge. Furthermore, the Liquor Board argues that the use of "knowingly" in only one provision of the Rules shows

that it did not intend to impose a knowledge requirement in the other provisions. Lastly, the Liquor Board urges us to apply the three-factor test from *Dawkins v. State*, 313 Md. 638 (1988), to conclude that because the Liquor Board did not designate a mental state requirement in the language of the Rules, they impose strict liability.

Kougl contends that a licensee must have actual or constructive knowledge of the conduct at issue to violate the Rules. In other words, he maintains that the Rules require the Liquor Board to show that the licensee either knew or reasonably should have known about the goings-on to breach the regulations. He argues that the words "permit," "suffer," and "allow" require a licensee to have knowledge of the offending conduct. Thus, he contends, the Liquor Board was required to show that he knew or should have known about his employee's actions to find a violation of the Rules and suspend his liquor license.[7]

### Plain Language Meaning

Although we accord an agency considerable deference in interpreting its own regulations, we review its conclusions of law for error by applying our well-settled principles of statutory interpretation. *Hranicka v. Chesapeake Surgical, Ltd.*, 443 Md. 289, 297–98 (2015) (citation omitted). Therefore, we begin by analyzing whether the plain language of the Rules supports imposing strict liability. Like a statute, a regulation's plain

---

[7] During oral argument, through counsel, Kougl also argued that only statutes and regulations concerning minors, such as the Liquor Board Rule at issue in *Hoyle v. Board of Liquor License Commissioners for Baltimore City*, 115 Md. App. 124 (1997), impose strict liability. We have acknowledged that "[l]egislators generally have broader discretion in enacting laws to promote the health and welfare of children than they have for adults." *Owens v. State*, 352 Md. 663, 681 (1999). But we have never held that strict liability applies only to regulations seeking to protect minors, and we decline to do so here.

language is "the best evidence of its own meaning." *Total Audio-Visual Sys., Inc. v. Dep't of Labor, Licensing & Regulation*, 360 Md. 387, 395 (2000) (citations omitted). When interpreting the regulation, "it is proper to consult a dictionary or dictionaries for a term's ordinary and popular meaning." *Chow v. State*, 393 Md. 431, 445 (2006) (citations omitted). "[W]hen the language is clear and unambiguous, our inquiry ordinarily ends there." *Christopher v. Montgomery Cty. Dep't of Health & Human Servs.*, 381 Md. 188, 209 (2004) (alteration in original) (citation omitted). We conduct this plain language inquiry within the context of the regulatory scheme, and "our approach is a commonsensical one designed to effectuate the purpose, aim, or policy of the enacting body." *Id.* (citation and internal quotation marks omitted).

Liquor Board Rule 4.17 governs sexual conduct and obscenity on licensed premises.[8] Sections (a) and (b) of the Rule provide:

> (a) No licensee shall permit or suffer his premises to be used for the purpose of any sexual activity, nor shall any licensee **permit** or **suffer** any employee, patron or frequenter to solicit any person for prostitution or other immoral purposes.

---

[8] Effective January 1, 2016, Rule 4.17 was revised and renumbered. Sections (a) and (b) of the current version, now numbered Rule 4.15, provide:

> (a) A licensee may not permit the licensed premises to be used for any sexual activity. A licensee, any employee, patron or frequenter may not solicit any person for prostitution or other immoral purposes.

> (b) A licensee may not permit a person to appear in an act or other performance with breasts or the lower torso uncovered. A licensee may not knowingly permit the licensed premises to be used for the conduct, exhibition, or any unlawful performance.

7

(b) No licensee shall **permit** or **suffer** any person to appear in any act or other performance with breasts or the lower torso uncovered; nor shall any licensee knowingly permit or suffer his premises to be used for the conduct, exhibition or performance of an obscene act or other performance.

(Emphasis added.) The Liquor Board found that Kougl "permit[ted] or suffer[ed] [an] employee . . . to solicit [a] person for prostitution" in violation of Rule 4.17(a). It also found that Kougl "permit[ted] or suffer[ed] [a] person to appear in [an] act or other performance with breasts . . . uncovered" in violation of Rule 4.17(b).[9] Kougl argues that because he was not aware of his employee's conduct, he did not "permit" or "suffer" her actions. In other words, he contends that Rule 4.17 includes an actual or constructive knowledge requirement. We disagree.

*Black's Law Dictionary* (*Black's*) provides three definitions for "permit": (1) "[t]o consent to formally"; (2) "[t]o give opportunity for"; and (3) "[t]o allow or admit of." *Permit*, Black's Law Dictionary (10th ed. 2014). To consent to something formally, the actor certainly must know about the approved activity. But the second definition—"[t]o give opportunity for"—does not require the actor's knowledge of the conduct at issue. *Black's* provides as an example, "[L]ax security permitted the escape." Just as lax security could permit an escape without knowledge that it is happening, licensees can permit prohibited conduct without knowledge of the offending behavior. Similarly, the third

---

[9] The Liquor Board maintains that Kougl's employee appeared in a "performance" under Rule 4.17(b) when she exposed her breasts to Detective Jackson. Kougl does not challenge this interpretation of the Rule.

8

definition does not require knowledge on the part of the actor because, as discussed below, a licensee can "allow" prohibited conduct without knowledge that it is occurring.

To choose the appropriate definition, we look to the agency's interpretation of its own regulation. *Md. Transp. Auth. v. King*, 369 Md. 274, 288–89 (2002) (citations omitted). We give deference to an agency's interpretation "unless it is plainly erroneous or inconsistent with the regulation." *Id.* (citations and internal quotation marks omitted); *see also Md. Comm'n on Human Relations*, 295 Md. at 593 ("the agency's construction of its rule is entitled to weight"). Because neither is the case here, we hold that a licensee can unknowingly "permit" conduct prohibited by Rules 4.17(a) and (b).

*Black's* defines "suffer" as "[t]o allow or permit (an act, etc.)." *Suffer*, Black's Law Dictionary. As established above, "permit" does not require knowledge, and—as discussed below—neither does "allow." *Black's* provides "to suffer a default" as an example of how "suffer" is used. *Id.* A loan enters default when the borrower fails to make payments, regardless of whether the borrower was aware of the obligation to pay. Accordingly, by its plain meaning, "suffer" does not impose a knowledge requirement on Rules 4.17(a) or (b).

Moreover, other states interpreting the words "permit" and "suffer" in liquor board regulations have concluded that they impose strict liability. *See, e.g., Div. of Alcoholic Beverage Control v. Maynards Inc.*, 927 A.2d 525, 538 (N.J. 2007) ("It has long been the law in New Jersey that, in the context of the regulation of alcoholic beverages, the word suffer . . . imposes responsibility on a licensee, *regardless of knowledge . . . .*" (emphasis in original) (citation and internal quotation marks omitted)); *City of West Allis v. Megna*, 133 N.W.2d 252, 253 (Wis. 1965) (regulation that provide[d] "no keeper of a tavern . . .

9

shall . . . suffer or permit" anyone under 21 to enter the licensed premises impose[d] strict liability).[10]

The Liquor Board found that Kougl also violated Rule 4.18, which prohibits illegal conduct on a licensee's premises.[11] The Rule provides:

> No licensee shall commit or **allow** the commission on his premises of any act which shall be contrary to any federal, state or local statute, law or ordinance or against the public peace, safety, health, welfare, quiet or morals.

(Emphasis added.) Similar to his argument regarding Rules 4.17(a) and (b), Kougl argues that "allow" requires actual or constructive knowledge. The plain meaning of the word proves otherwise. The first definition in *Black's* for "allow" includes "[t]o put no obstacle in the way of" and "to suffer to exist or occur." *Allow*, Black's Law Dictionary. These definitions do not contain a knowledge requirement. A licensee could both "put no obstacle in the way of" illegal conduct and not realize it is happening.

---

[10] We are aware that some courts have found that "suffer" and "permit" require knowledge on the part of the licensee. *See, e.g.*, *Leake v. Sarafan*, 315 N.E.2d 796, 797 (N.Y. 1974) (knowledge required to find that licensee suffered or permitted gambling on licensed premises); *Full Moon Saloon, Inc. v. City of Loveland*, 111 P.3d 568, 570 (Colo. App. 2005) ("The word 'permit' connotes affirmative or knowing conduct."). We disagree with these courts.

[11] Effective January 1, 2016, Rule 4.18 was revised and renumbered. The current Rule, which is now numbered Rule 4.16, provides:

> A licensee may not commit or allow the commission on the licensed premises of an act that is contrary to any federal, State or local statute, law or ordinance or that is against the public peace, safety, health, welfare, quiet, or morals.

10

*Black's* also defines "allow" as "[t]o give consent to; to approve" and "[t]o grant permission," which require the actor's knowledge. But, as discussed above, our task is not to determine whether any possible definition includes a knowledge requirement. Rather, it is to determine whether the Liquor Board's interpretation of its Rules is legally correct. *See Adventist Health Care*, 392 Md. at 120–21 (citations omitted) (Courts review an agency's conclusions of law *de novo*.). Because an accepted definition of "allow" does not require knowledge—and we grant the Liquor Board's interpretation some deference—we hold that Rule 4.18 imposes strict liability.

The Liquor Board also argues that in the absence of other language designating a mental state requirement, the use of the term "knowingly" in the second part of Rule 4.17(b) suggests the agency intended those Rules that do not include the term to impose strict liability. In response, Kougl contends that "knowingly" was included in the second phrase of 4.17(b) by "happenstance." We agree with the Liquor Board.

The Court of Special Appeals analyzed a Liquor Board Rule with a similar structure to Rule 4.17(b) in *Hoyle v. Board of Liquor License Commissioners for Baltimore City*, 115 Md. App. 124 (1997). It concluded that the Liquor Board Rule prohibiting the sale of alcohol to minors imposed strict liability on licensees. *Id.* at 130. Rule 4.01(a) provided:

> (a) No licensee shall sell or furnish alcoholic beverages to any person under twenty-one (21) years of age **or** to any person **with the knowledge** that such person is purchasing or acquiring such beverages for consumption by any person under twenty-one (21) years of age.

(Emphasis added.) Comparing the Rule's two phrases, the court explained that as opposed to the second phrase—the prohibition on selling alcohol to someone buying it for a minor—

11

the first phrase—the prohibition on selling alcohol to anyone under twenty-one—"stands alone, unmodified by express terms." *Id.* at 130. Emphasizing that the agency interpreted this regulation to impose strict liability, the court concluded that "the intent of the [Liquor] Board was to make those licensees who furnish alcoholic beverages to anyone under the age of twenty-one strictly liable for the offense." *Id.*

Additionally, in *State of Maryland Central Collection Unit v. Jordan*, 405 Md. 420 (2008), we held that a statute requiring vehicle owners to maintain car insurance imposed strict liability due, in part, to the Legislature's use of "knowingly" elsewhere in the statutory scheme. *Id.* at 431–32. The statute at issue was "silent as to whether knowledge or intent is a required element for a violation thereof." *Id.* at 430. Although we acknowledged that the "absence of such language in a statute . . . does not necessarily make it a strict liability offense," we reasoned that because the Legislature articulated a mental state requirement for other provisions within the statutory scheme, it intentionally omitted one from the provision at issue. *Id.* at 430–32 (citing *Staples v. United States*, 511 U.S. 600, 619 (1994)) (additional citations omitted). We explained, "The Legislature's omission of a *mens rea* requirement in [this provision] . . . leads us to conclude that the Legislature deliberately chose not to make knowledge an element of the offense of maintaining the required security on an automobile." *Id.* at 431–32; *see also Outmezguine v. State*, 335 Md. 20, 43 (1994) (When the surrounding provisions contained a knowledge requirement, the "conspicuous absence" of such a requirement in the offense of photographing a minor engaged in sexual activity revealed an intent to impose strict liability.); *Garnett v. State*, 332 Md. 571, 585–86 (1993) (Omitting "knows or should

12

reasonably know" from the statutory rape provision, but including it in surrounding provisions, "indicates that the Legislature aimed to make statutory rape with underage persons a more severe prohibition based on strict criminal liability.").

When interpreting a regulation, we must read each provision in the context of the regulatory scheme to ensure that "no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory." *In re Kaela C.*, 394 Md. 432, 467 (2006) (citation omitted). An interpretation of the Rules that requires the licensee to act with actual or constructive knowledge would render superfluous the word "knowingly" in Rule 4.17(b). Thus, we conclude that Rules 4.17(a), 4.17(b), and 4.18 do not include a knowledge requirement—they impose strict liability.

The plain language meaning of the Rules comports with the purpose of Maryland's liquor regulations, which seek to ensure respect and obedience for the law. AB § 1-201(a)(1)(i). Additionally, a liquor license is a privilege, and the Liquor Board has the power to circumscribe that privilege as "deemed necessary to prevent [its] abuse." *Piscatelli v. Bd. of Liquor License Comm'rs*, 378 Md. 623, 639 (2003) (quoting *Dundalk Liquor Co. v. Tawes*, 201 Md. 58, 65 (1953)); AB § 12-2101(a). We agree with the New Jersey Supreme Court that "acceptance of the privileges and benefits of a liquor license in this State carries with it the burden that licensees are held to an exacting standard of conduct." *Maynards*, 927 A.2d at 539. Moreover, as the Wisconsin Supreme Court has recognized, being subject to strict liability is "a price that the [licensee] pays for the privilege of becoming licensed." *City of West Allis*, 133 N.W.2d at 254.

## ***Dawkins* Factors**

In addition to its plain meaning arguments, the Liquor Board contends that the Rules are "public welfare offenses" under the three-factor analysis applied in *Dawkins v. State*, 313 Md. 638 (1988). Thus, it argues, the Rules appropriately impose strict liability on licensees to further their regulatory purpose. In response, Kougl points to *State v. McCallum*, 321 Md. 451 (1991), where this Court held that a criminal statute prohibiting driving on a suspended license did not satisfy the *Dawkins* factors and therefore required actual or constructive knowledge on the part of the driver. He urges us to adopt the definition of knowledge from Judge Chasanow's concurring opinion, which includes "willful blindness."[12]

In *Morissette v. United States*, 342 U.S. 246 (1952), the Supreme Court defined "public welfare offenses" as "regulations which heighten the duties of those in control of particular industries, trades, properties or activities that affect public health, safety or welfare." *Id.* at 254. It distinguished "public welfare offenses" from traditional common-law, criminal offenses:

> These cases do not fit neatly into any of such accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction

---

[12] In his *State v. McCallum*, 321 Md. 451 (1991), concurring opinion, Judge Chasanow explained that actual knowledge includes "deliberate ignorance" or "willful blindness," which "exists where a person believes that it is probable that something is a fact, but deliberately shuts his or her eyes or avoids making reasonable inquiry with a conscious purpose to avoid learning the truth." *Id.* at 458 (Chasanow, J., concurring) (citations omitted).

14

> where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize.

*Id.* at 255–56. The Supreme Court explained that "lawmakers . . . have sought to make such regulations more effective by invoking criminal sanctions to be applied by the familiar technique of criminal prosecutions and convictions." *Id.* at 254–55 (footnote omitted). Furthermore, courts have allowed legislatures to forego the traditional mental state requirement for criminal acts and impose strict liability for these offenses. *Id.* at 258–59.

In *Dawkins v. State*, we analyzed three factors to determine whether statutes prohibiting the possession of a controlled dangerous substance and the possession of drug paraphernalia constituted "public welfare offenses." We held that the statutes did not constitute "public welfare offenses" and declined to impose strict liability. *Dawkins*, 313 Md. at 651–52. Relying on *Morissette*, we explained that strict liability "public welfare offenses" often have the following characteristics: (1) they are "regulatory in nature"; (2) they involve light fines or penalties; and (3) "regardless of the defendant's state of mind, the defendant is generally in a position to prevent the violation from occurring." *Id.* at 644–45 (citing *Morissette*, 342 U.S. at 256) (additional citations omitted). But this three-factor inquiry is not applicable in this case.

Recognizing that criminal liability generally requires criminal intent, the *Dawkins* Court analyzed whether it was appropriate for a criminal statute to impose strict liability. *Id.* at 643 ("At common law, a crime occurred only upon the concurrence of the individual's act and his guilty state of mind."). We have explained, "The requirement that

an accused have acted with a culpable mental state is an axiom of criminal jurisprudence." *Garnett*, 332 Md. at 578–80 (describing scholars' rejection of strict criminal liability). Therefore, we are "reluctant to read into criminal statutes an intent of the [L]egislature to forego a mens rea requirement." *Owens v. State*, 352 Md. 663, 671 (1999). Consequently, we apply the *Dawkins* factors to criminal statutes to determine whether "the Legislature intended to eliminate the requirement of *mens rea* and create a strict liability public welfare offense." *McCallum*, 321 Md. at 456; *see also Lowery v. State*, 430 Md. 477, 501–03 (2013) (applying *Dawkins* analysis to criminal prohibition on hydraulic clam dredging in a protected area).

Because the Liquor Board Rules are civil regulations, however, there is no presumption against strict liability. *See Mesbahi v. Md. State Bd. of Physicians*, 201 Md. App. 315, 339 (2011) (When interpreting civil regulatory statutes, "[t]he presumption against strict liability offenses in criminal law is irrelevant."); *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 123 F. Supp. 3d 83, 87 (D.D.C. 2015) (declining to impose criminal law's presumption against strict liability to civil provisions of the D.C. Wiretap Act); *Long v. Hammond*, 596 S.E.2d 839, 845–46 (N.C. Ct. App. 2004) (rejecting argument that presumption against strict liability applies to civil aspect of state licensing requirements for ERISA certified health plans). Therefore, we do not need to apply the *Dawkins* analysis to determine whether the presumption has been overcome. Because we decline to apply the *Dawkins* factors to the Liquor Board Rules at issue, the Court's reasoning in *McCallum* is not analogous to this case.

**CONCLUSION**

Liquor Board Rules 4.17(a) and (b), and 4.18 impose strict liability on licensees for offending conduct that occurs on their premises. Therefore, the Liquor Board was not required to show that Kougl knew or should have known about his employee's actions to find a violation of the Rules and impose a sanction. Accordingly, we reverse the judgment of the Court of Special Appeals.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. COSTS TO BE PAID BY RESPONDENT.**

17