627 A.2d 541

**Elan OUTMEZGUINE**

v.

**STATE of Maryland.**

**No. 1713, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

July 12, 1993.

Certiorari Granted Nov. 23, 1993.

Martha Weisheit, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

George E. Simms, III, Sp. Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Andrew L. Sonner, State's Atty., for Montgomery County, Rockville, on the brief), for appellee.

Argued before WILNER, C.J., HARRELL, J., and JAMES S. GETTY, Judge (retired), Specially Assigned.

WILNER, Chief Judge.

Appellant was convicted by a jury in the Circuit Court for Montgomery County of child pornography, for which he was sentenced to eight years in prison. He raises three issues on appeal:

I. Whether the trial court erred in ruling that Md.Ann. Code, art. 27 § 419A(c) imposed strict liability and in therefore refusing to instruct the jury regarding a *mens rea* for that crime.

II. Whether the trial court erred in ruling that the exemptions of art. 27, § 423 did not apply to § 419A and in refusing to instruct the jury with regard to those exemptions.

III. Whether the trial judge improperly considered at sentencing a victim impact statement.

*Background*

The victim, Jennifer, was a troubled and vulnerable child. She had begun abusing alcohol when she was about nine and

drugs when she was 14. In December, 1990, when she was 15 and a high school student, she was on cocaine and was sexually promiscuous.

According to Jennifer, appellant called her at home, told her that he knew her sister, and asked her to pose for him for $150. He said she would not have to pose in the nude. Jennifer agreed, and soon after, on December 21, 1990, he picked her up, stopped at a liquor store to get some wine coolers, and then took her to his house, where she drank some of the coolers. He gave her items of underwear and lingerie to wear, instructed her in various poses, and took a series of photographs that Jennifer identified in court. Jennifer returned to pose twice more in January, 1991, once with a girlfriend. She said that she had various forms of sexual relations with appellant on a number of occasions, some at his home during a photo session, some in a car. Appellant had promised her money and drugs for the posing and the sex but provided neither.

Jennifer's mother had been concerned about the child for some time. One day, she came across Jennifer's diary, read it, and realized that prompt professional intervention was necessary. Jennifer was soon placed in an inpatient treatment program for drug and alcohol abuse. During a counselling session, she mentioned the episodes with appellant, and that led to the involvement of the police. A search warrant for appellant's house was obtained, and, in the course of executing it, the police discovered cameras, lingerie, and a suitcase that appellant admitted belonged to him. In the suitcase, among other things, were many photographs—some loose, some in an album—of Jennifer, which Jennifer testified appellant took at his home. In some of the pictures, Jennifer is touching her bare breast or buttocks. In one, she is spreading apart her vagina, which she claimed appellant instructed her to do.

Appellant, who was about 25 at the time, said that he had been in the home improvement business but took pictures as a hobby. Some of his photographic work involved taking pictures of female dancers. He claimed that he met Jennifer as

she was hitchhiking, that he took her to work with him and then dropped her off near where he met her. A few days later, she called and arranged for her and her boyfriend, one R.C., to perform some additional work for appellant. During one of these trips, Jennifer noticed a photo album in appellant's van and commented that she could pose as well. On one later occasion, after completing a job, appellant, Jennifer, and Jennifer's boyfriend R.C. repaired to appellant's house where appellant allowed the boyfriend to use appellant's camera and equipment to take pictures of Jennifer wearing appellant's sister's "clothing." Appellant denied having taken any pictures of Jennifer; he also denied having had sexual relations with her. The jury did not believe him.

### Requirement of Mens Rea

Appellant was prosecuted under Md.Code art. 27, § 419A(c). Section 419A is part of the subtitle of article 27 dealing generally with "Obscene Matter," but it is not entirely an "obscenity" statute. It deals with child pornography—the production and dissemination of material depicting children engaged in either "obscene" conduct or other defined sexual conduct that may, but need not, be legally "obscene." For purposes of that section, "minor" is defined as "an individual under 18 years of age." § 419A(a). The term "obscene" is not statutorily defined but partakes the definition Constitutionally allowable. *See 400 E. Baltimore St. v. State*, 49 Md.App. 147, 431 A.2d 682, *cert. denied*, 291 Md. 772–74, 778, 780, 782 (1981), *cert. denied*, 455 U.S. 940, 102 S.Ct. 1431, 71 L.Ed.2d 650 (1982). "Sexual conduct" is defined in § 416A(d) as including "any touching of or contact with the genitals, pubic areas, or buttocks of the human male or female, or the breasts of the female."

Incorporating those definitions, § 419A proscribes three different forms of child pornography. Subsection (b) makes it unlawful for a person to solicit, cause, induce, or *knowingly* permit a minor to engage as a subject in the production of obscene matter or visual representation or performance that depicts a minor engaged as a subject in sexual conduct.

Subsection (c), under which appellant was prosecuted, provides that "[e]very person who photographs or films a minor engaging in sexual conduct" is subject to criminal penalty. Subsection (d) makes it unlawful for a person *knowingly* to promote, distribute, or possess with intent to distribute any matter or visual representation or performance that depicts a minor engaged as a subject in sexual conduct. As indicated, the word "knowingly" appears in subsections (b) and (d), but not in (c).

No evidence was produced during the State's case-in-chief as to whether appellant knew how old Jennifer was in 1990–91. At the conclusion of the State's case, appellant moved for judgment of acquittal, arguing, in part, that, although § 419A(b) did not expressly require knowledge that the victim was a minor, the law implied such a requirement. The State argued to the contrary—that, while the Legislature had required knowledge in other parts of the statute, it had not imposed that requirement with respect to subsection (c), and that the court ought not to do so. The court said that it was "going to adopt the argument taken by the State" and thus denied the motion. Appellant then testified, thereby effectively withdrawing his motion. Md.Rule 4–324(c).

In his case, appellant asserted that Jennifer had not told him that she was 15 and that he did not know she was 15. He did not say what he thought her age was or whether he knew or suspected that she was under 18. In rebuttal testimony, Jennifer stated that she had told appellant that she was 15 and what school she was attending. She made clear "he knew my age."

At the end of the case, appellant renewed his motion for acquittal for the reasons cited in his earlier motion. The motion was summarily denied, without explanation. Appellee then submitted four proposed jury instructions dealing with the requirement of knowledge. The principal ones were that "[a]ll the acts described in this Section are made criminal only if they are committed knowingly" and that "knowledge must be proven by the State." None of the proposed instructions

indicated specifically that the defendant must know that the person being photographed or filmed was under 18; from the brief discussion on the motion for acquittal at the end of the State's case, however, we assume that is what appellant had in mind.[1]  The court denied those requests and essentially read § 419A(c) to the jury as it is written.  Although the question of appellant's state of knowledge as to Jennifer's age was not argued to the jury by either side, the jury apparently had some concern about it.  During deliberation, it sent out a note, which, despite the court's direction that it be filed, we cannot find in the record.  The only reference to it in the transcript is this statement from defense counsel:

> "There was a note that was delivered and the Court answered the note.  Both answers were no in regards to whether the defendant need know about the child, whether the child be 18, and did he need to know.  As I indicated, I thought that both answers should be answered yes.  [The prosecutor] thought no.  Your Honor said no.  I take exception to that note, okay, the answers to the note."

The deceptively simple question here is whether, to convict appellant under § 419A(c), the State must prove that he had knowledge that Jennifer was under 18 when the photographs were taken.  The State says "no" because the statute does not require knowledge as an element.  Its position is that the Legislature had the opportunity to add the requirement on several occasions, that it, in fact, added the requirement in other subsections of § 419A, and that the omission from subsection (c) was deliberate.  Appellant, relying principally on *Dawkins v. State*, 313 Md. 638, 547 A.2d 1041 (1988), *State v. McCallum*, 321 Md. 451, 583 A.2d 250 (1991), and *New York*

---

1.  Another proposed instruction provided: "Knowingly means having knowledge of the character and content of the subject matter."  Although, taken in isolation, this might be viewed as a waiver of appellant's present claim that knowledge of the minor's age is required for a conviction under § 419A(b), we think that the issue of whether the statute required knowledge of Jennifer's age was adequately presented to the court and shall not construe this one proposed instruction in such a narrow fashion.

*v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), as well as some other out-of-State cases, urges that the requirement must be read into the statute despite its omission by the General Assembly. We agree with the State.

Mr. Dawkins was convicted of possessing a controlled dangerous substance and controlled paraphernalia. Those items were found inside a tote bag that had been in his possession. Dawkins claimed, and offered evidence to show, that the bag belonged to his girlfriend and that he was unaware of its contents. The issue was whether knowledge is an element of the possession offenses—whether the State had to prove that he had knowledge that the bag contained contraband items. The statutes, as written, did not make knowledge an element of the offense, and in an earlier case (*Jenkins v. State,* 215 Md. 70, 137 A.2d 115 (1957)), the Court, construing a predecessor statute, had held that the defendant's knowledge of the contents of a package in his possession was not an element of the offense.

Distinguishing, and in effect overruling, *Jenkins,* the Court held that knowledge that the item possessed is contraband *is* an element of the offense. In reaching that conclusion, the Court recounted that at common law a crime occurred only when, in addition to the criminal act, there was a "guilty state of mind." 313 Md. at 643, 547 A.2d 1041. During the 19th century, it noted, legislatures began to enact "strict liability" offenses "designed to protect the public health and welfare." *Id.* at 644, 547 A.2d 1041. Those offenses initially involved the sale of alcohol or adulterated foods but later covered traffic regulations, the sale of misbranded articles, and trafficking in narcotics. They normally involved penalties so light that "the courts can afford to disregard the individual in protecting the social interest." *Id.,* quoting from Sayre, *Public Welfare Offenses,* 33 Colum.L.Rev. 55, 70 (1933).

Although the Maryland statute did not expressly contain the element of knowledge, the Court observed that the Uniform Controlled Substances Act, upon which the Maryland law was largely based, *did* contain that element, that comparable stat-

utes in most other States also contained it, and that, even where comparable statutes did not expressly contain the element, the courts had, "by judicial decision, determined that knowledge is an element of the crime of possession." *Id.* 313 Md. at 646–47, 547 A.2d 1041.

With this background, the Court noted that the Maryland statute proscribing the possession of controlled substances defined "possession" as the exercise of actual or constructive "dominion or control" over a thing, and concluded that "[k]nowledge of the presence of an object is normally a prerequisite to exercising dominion and control." *Id.* at 648–49, 547 A.2d 1041. A similar approach was taken with respect to the paraphernalia offense: possession is unlawful only if the person intends to use the item for the illegal administration of a controlled substance, and "[a]n individual can hardly intend to use an object in his possession if he is unaware that he possesses it." *Id.* at 649, 547 A.2d 1041. As a matter of statutory construction, therefore, the Court concluded that knowledge was an element of both offenses. *Jenkins* was cast aside as involving a different statute enacted before the trend, embodied in the Model Penal Code, away from strict liability public welfare offenses.

The issue in *McCallum* was whether *mens rea* was required for the offense of driving on a suspended license—whether the State had to show that the defendant was, or should have been, aware that his license had been suspended and whether the defendant was entitled to an instruction to that effect. We held that *mens rea* was an element (*McCallum v. State,* 81 Md.App. 403, 567 A.2d 967 (1990)), and, in a *per curiam* Opinion, the Court of Appeals affirmed.

The Court of Appeals used the analysis set forth in *Dawkins* to reach the conclusion that driving on a suspended license was not in the nature of a public welfare offense that could be based on strict liability. In that regard, it held that, while many motor vehicle offenses are purely regulatory in

nature, this one also had a punitive aspect to it, and, because it carried a possible jail sentence of up to two years for a repeat offender, "the Legislature *did not intend this* to be a 'public welfare' offense." 321 Md. at 457, 583 A.2d 250 (emphasis added). The "most important consideration" in the analysis, said the Court, quoting from *Dawkins,* was whether " 'regardless of the defendant's state of mind, the defendant is generally in a position to prevent the violation from occurring.' " *Id.* at 457, 583 A.2d 250. To that, the Court responded: "McCallum would have no reason to avoid driving and no reason to suspect that he was endangering the public by driving if he had no knowledge that his driving privileges were suspended." *Id.*

These cases, and those upon which the Court relied in them, are statutory construction cases: the issue was simply whether the Legislature, despite omitting to add the element of knowledge expressly, nevertheless intended to require it. The *Dawkins* analysis and the experience in other States were used as aids in construing the statute. Appellant here posits as an additional consideration the need for precision in this offense because of its nexus to First Amendment concerns. It is in that context that he cites *New York v. Ferber, supra,* 458 U.S. 747, 102 S.Ct. 3348, where the Supreme Court upheld the constitutionality of a New York child pornography statute but noted in passing, at 765, 102 S.Ct. at 3358, that "[a]s with obscenity laws, criminal responsibility may not be imposed without some element of scienter on the part of the defendant."

Although States have long had laws prohibiting the display or distribution of various forms of "obscenity," including specifically the distribution of obscene materials to minors and the employment of minors in the distribution of such material, it was not until the mid–1970's that a need was perceived to focus more particularly on the use of children as the subjects of pornographic material. Citing the interstate nature of traffic in child pornography, "State and local officials called upon Congress to enact Federal criminal child protection

laws." H.R.Rep. No. 98–536 (1984), accompanying P.L. 98–292, U.S.Code Cong. & Admin.News 1984, p 492.

Congress responded initially in 1977 with the enactment of P.L. 95–225—the Protection of Children Against Sexual Exploitation Act of 1977. In its Report accompanying that Act, the United States Senate found "a close connection between child pornography and the equally outrageous use of young children as prostitutes," that the children recruited for this lucrative enterprise "are highly vulnerable children in the first place," frequently the "victims of child abuse, or of broken homes, or of parents who simply do not care," and that encounters of this kind "cannot help but have a deep psychological, humiliating impact on these youngsters and jeopardize the possibility of healthy, affectionate relationships in the future." S.Rep. No. 95–438 (1977), U.S.Code Cong. & Admin.News 1978, pp. 40, 46. The Senate lamented that only six States then had statutes proscribing the use of children in the production of pornographic material and that no Federal law then dealt directly with "the abuse of children that is inherent in the production of such materials."

The Act, passed by Congress in February, 1978, added §§ 2251–2253 to title 18 of the U.S.Code. Section 2251 punished the inducement or employment of minors—defined then as children under 16—to engage in "sexually explicit conduct" for the purpose of producing for pecuniary profit any visual or print medium depicting such conduct. The term "sexually explicit conduct" was defined in § 2253 as sexual intercourse, bestiality, masturbation, sado-masochistic abuse, and lewd exhibition of the genitals or pubic area. Section 2252 prohibited the distribution of "obscene" visual or print medium depicting children engaging in such conduct. The limitation of § 2252 to "obscene" material arose from Congressional concern at the time that proscriptions on the distribution of material could not Constitutionally extend beyond that which was legally obscene under prevailing standards. The actual offense enacted as § 2251 was as follows:

"Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in ... any sexually explicit

conduct for the purpose of producing any visual or print medium depicting such conduct, shall be punished as provided under subsection (c), if such person knows or has reason to know that such visual or print medium will be transported in interstate or foreign commerce or mailed, or if such visual or print medium has actually been transported in interstate or foreign commerce or mailed." [2]

It is evident at a glance that, while Congress required, as an element of the crime stated in § 2251, knowledge that the material would likely be mailed or distributed in interstate or foreign commerce, it did *not* require knowledge that the person photographed was a minor. Section 2252, on the other hand, *did* require that the distribution of such material, or the receipt of such material for distribution, be knowing. One had to "knowingly" transport or receive the material.

The omission of scienter as to the age of the child in § 2251 was deliberate. As pointed out in *U.S. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 858 F.2d 534, 538 (9th Cir.1988), the original version of the bill would have made it unlawful for a person "knowingly" to employ, entice, or coerce a minor to engage in sexually explicit conduct for the purpose of producing or promoting a film or other print. The Department of Justice urged deletion of "knowingly" to "avoid the inference that producers could be prosecuted only if they knew the minor's age." Responding to that concern, the House of Representatives struck the word from its bill and the Conference Committee assented to that amendment " 'with the intent that it is not a necessary element of a prosecution that the defendant knew the actual age of the child.' " H.C.Rep. No. 811 (1977), U.S.Code Cong. & Admin.News 1978, p. 69, quoted in *U.S. v. U.S. Dist. Court supra*, at 538. In light of that clear legislative intent, the Ninth Circuit Court held that "[t]here is thus little doubt that knowledge of the minor's age is not necessary for conviction under section 2251(a)." *Id. See also*

---

**2.** Section 2253(3) defined "producing" as "producing, directing, manufacturing, issuing, publishing, or advertising, *for pecuniary profit."* (Emphasis added.)

*U.S. v. Kleiner,* 663 F.Supp. 43 (S.D.Fla.1987); *U.S. v. Thomas,* 893 F.2d 1066, 1070 (9th Cir.), *cert. denied,* 498 U.S. 826, 111 S.Ct. 80, 112 L.Ed.2d 53 (1990).

The first Maryland statute in this area was enacted only three months after the Federal—in the very next session of the General Assembly. By 1978 Md.Laws, ch. 573, the General Assembly enacted a new § 419A to art. 27, making it a criminal offense to solicit, cause, induce, "or knowingly permit" a person under 16 to engage as a subject in the production of obscene matter or to photograph or film a person under 16 engaged in an obscene act. Presumably out of Constitutional concerns, the Legislature limited the reach of the statute to conduct or materials that were "obscene," and thus did not go so far in that respect as Congress had done in § 2251, but, like the Federal approach, it enacted no express requirement that the perpetrator know that the child was under 16. It is noteworthy that there was a spate of bills introduced into that session of the General Assembly dealing with child pornography, some of which would have expressly required knowledge that the victim was under the prescribed age. *See, for example,* S.B. 248 (1978), H.B. 35 (1978). The question of whether to include such a requirement was thus squarely before the Legislature, and, by enacting the bill that it did, it chose not to do so.

Both the Federal and the Maryland statutes have been amended a number of times since their enactment. The first round of amendments was in response to *New York v. Ferber, supra,* 458 U.S. 747, 102 S.Ct. 3348. By then—1982—47 States had enacted statutes dealing specifically with child pornography. Unlike the then-current Maryland law, the New York law under challenge and the statutes in 19 other States did not require that the child-depicting material be "obscene," within the meaning of *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and that formed the principal basis of the attack. The New York provision at issue punished a person "if knowing the character and content thereof" he employed, authorized, or induced a child less than 16 years of age to engage in a sexual performance or pro-

duced, directed, or promoted any performance which included sexual conduct by a child less than 16. Knowledge was required that the activity was a "sexual performance" or that the performance included "sexual conduct," both of which terms were defined in the statute, but the statute did *not* require that the defendant know the child was less than 16.

The major holding in *Ferber* was that proscription against child pornography did not have to be limited to performances or depictions that were "obscene" under the *Miller* test. The legislative judgment that the use of children as subjects in the production and distribution of pornographic materials is harmful to those children "easily passes muster under the First Amendment," said the Court, 458 U.S. at 758, 102 S.Ct. at 3355. The Court noted later, at 764, 102 S.Ct. at 3358, that, "[a]s with all legislation in this sensitive area, the conduct to be prohibited must be adequately defined by the applicable state law, as written or authoritatively construed." Although the test for child pornography is separate from the obscenity standard, the Court said that it may be compared to that standard for the purpose of clarity, and, it was in that context that the Court observed, at 765, 102 S.Ct. at 3358, that "[a]s with obscenity laws, criminal responsibility may not be imposed without *some element of scienter* on the part of the defendant." (Emphasis added.) In support, or explanation, of that statement, the Court cited *Smith v. California*, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959) (invalidating an ordinance making criminal the mere possession of a book later determined to be obscene even if the defendant had no knowledge of the content of the book), and *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590, *reh. denied*, 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129 (1974) (holding that the scienter element in the statute prohibiting the mailing of obscene material required only that the defendant know the content of the material, not that it was legally obscene).

There is nothing in *Ferber* to suggest any Constitutional requirement that a defendant charged with photographing minors engaged in proscribable sexual conduct must have knowledge that the subjects are indeed minors. That was not

at issue in the case. *See United States v. Reedy,* 632 F.Supp. 1415 (W.D.Okla.1986), *aff'd,* 845 F.2d 239 (10th Cir.1988), *cert. denied,* 489 U.S. 1055, 109 S.Ct. 1318, 103 L.Ed.2d 587 (1989); *State v. Fan,* 445 N.W.2d 243 (Minn.App.), *cert. denied,* 494 U.S. 1030, 110 S.Ct. 1480, 108 L.Ed.2d 617 (1990), construing a comparable Minnesota statute.

With the assurances provided by *New York v. Ferber,* Congress enacted the Child Protection Act of 1984 (P.L. 98–292). That Act amended the 1977 law, principally to (1) extend the proscriptions in § 2252 to depictions of "sexually explicit conduct" that need not be legally "obscene," (2) eliminate the requirement that the production of such material be for pecuniary profit, and (3) redefine "minor" to include children 16 or 17. Although some technical amendments were made to § 2251, no attempt was made to reverse the 1977 decision deleting any suggestion that a defendant charged under § 2251 must know the age of the child. The focus was on strengthening the law, not weakening it. H.R.Rep. No. 98–536, accompanying P.L. 98–292, *supra.*

The Maryland response to *Ferber* came in 1985 and 1986. As noted, the then-current law prohibited the solicitation of children to engage as a subject in the production of "obscene" matter and the actual photographing of children engaging in an "obscene act." The 1985 law left those provisions intact, although it did increase the penalty. The major thrust of that Act, for our purposes, was (1) the addition of a proscription against knowingly promoting, distributing, or possessing with intent to distribute any matter depicting "a child engaged as a subject in sexual conduct," as that term was defined in § 419A, and (2) a statement that the trier of fact

> "may determine whether a child who is depicted in obscene matter was under the age of 16 years by observation of the obscene matter depicting the child, oral testimony by a witness to the production of the obscene matter, expert medical testimony, or any other method authorized by an applicable provision of law or rule of evidence."

1985 Md.Laws, ch. 494. The child himself (or herself) did not need to testify.

The 1985 law expanded the reach of the statute beyond "obscene" matter only with respect to the promotion and distribution of pornographic material involving children, not with respect to the actual photographing or filming activity. That was dealt with a year later. By 1986 Md.Laws, ch. 112, the Legislature extended the provision outlawing the photographing of children to include the photographing or filming of children under 16 engaging in "sexual conduct." It also enlarged the second 1985 provision noted above to allow the trier of fact, by means other than the child's testimony, to determine whether a child depicted engaging in sexual conduct was under 16.

The last significant change to § 419A came in 1989 when the Legislature expanded each of the prohibitions to include the use of children who were 16 or 17. It did this by deleting from each subsection where it appeared the phrase "person under 16 years of age" and substituting for it the word "minor," which it defined as an individual under 18 years of age.

It was in 1989 that the Legislature came closest to revisiting the question now before us. Neither the law then in effect nor the 1989 bill purported, expressly, to include knowledge of the child's age as an element of the offense, to be proved by the State. Indeed, the Attorney General's Office had opined with respect to the 1989 bill (H.B. 243) that, based on decisions dealing with the Federal counterpart, "knowledge of the age of the child is not an element of the offense . . . and lack of knowledge need not be recognized as a defense." *See* letter opinion dated February 20, 1989, from Assistant Attorney General Kathryn M. Rowe to Delegate Anne MacKinnon, included among the records of the House Judiciary Committee on H.B. 243 in the Department of Legislative Reference. The first reader 1989 bill contained a provision that "[a] mistake of age is not a *defense* to a prosecution under this section" (emphasis added), but the Legislature deleted that statement,

notwithstanding the Attorney General's letter, apparently in response to a concern registered by a representative of the American Civil Liberties Union. Although an inference could perhaps be drawn from that deletion that the Legislature intended for mistake as to the victim's age to be an affirmative defense, no fair inference could be drawn that it intended knowledge of the victim's age to be an element of the offense.

A plain reading of the language of § 419A, in light of its legislative history and the interpretations given to comparable statutes, convinces us that the Legislature did not intend to make knowledge as to the age of the child an element of the offense, to be affirmatively proved by the State, and that we should not imply any such requirement. Although the penalty allowed for violating the section is, to be sure, a heavy one, the available record, both in Congress and in the General Assembly, indicates that this offense is principally (though obviously not entirely) regarded as a public welfare offense, designed more to eliminate a pernicious industry preying on vulnerable children than to punish individual malefactors.

This is but one of a class of legislative enactments that use the criminal law to protect children against exploitation, and the law generally applied with respect to those kinds of statutes is that, while the victim's status as a minor is an element of the offense, the defendant's knowledge of that status is not. Thus, it is generally accepted that knowledge of the victim's age is not an element of the offense (or even an affirmative defense) to carnal knowledge or "statutory rape." *Eggleston v. State,* 4 Md.App. 124, 241 A.2d 433, *cert. denied,* 251 Md. 748 (1968). It is not an element of the offense of transporting minors in interstate commerce for immoral purposes under 18 U.S.C. § 2421 *et seq. United States v. Hamilton,* 456 F.2d 171 (3d Cir.), *cert. denied,* 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972). Nor is it an element in the Federal offense of distributing controlled substances to a minor under 21 U.S.C. § 845. *United States v. Pruitt,* 763 F.2d 1256 (11th Cir.1985), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 856, 88 L.Ed.2d 896 (1986). Contrariwise, when the

Legislature wants to make such knowledge an element of this kind of offense, it knows precisely how to do so. *See, for example,* Md.Code art. 27, § 420—the section next following § 419A—making it a crime for a person "with knowledge that a person is a minor under 18 years of age" to employ the person to assist in displaying or distributing obscene materials. That kind of language, as we observed, was before the Legislature in 1978 in other child pornography bills and was not adopted.

In summary, using precisely the analysis employed by the Court in *Dawkins* and *McCallum,* we conclude that the General Assembly did not intend to make knowledge that the victim was under 18 an element of the offense. Not only is there no indication that the General Assembly intended to imply such a requirement, but there is no indication that it is commonly implied in comparable statutes elsewhere. Moreover, recognizing what the *McCallum* Court regarded as "the most important consideration" (321 Md. at 457, 583 A.2d 250), it is indeed possible for a person photographing or filming young people engaged in sexual conduct to determine whether they are under 18 and thus prevent the violation from occurring.

We therefore conclude that the court's denial of appellant's proposed instructions and its response to the jury's note were not in error. We need not consider here whether a mistake as to the victim's age can be offered as an affirmative defense, as was allowed in *U.S. v. U.S. Dist. Court for Cent. Dist. of Cal., supra,* 858 F.2d 534, because appellant never raised that defense in this case. As noted, although he claimed that he did not know that Jennifer was 15, he offered no evidence as to what he thought her age was at the time or that he did not know she was under 18.

### *Section 423 Exemptions*

As we indicated, § 419A is part of a subtitle of article 27 dealing with "Obscene Matter." Section 423 is also part of that subtitle. It provides:

"(a) The prohibitions and penalties imposed in this subtitle shall not extend to persons having bona fide scientific, educational, governmental, artistic, news, or other similar justification for possessing or distributing such matter. . . .

(b) A justification is not bona fide under this section with regard to depictions of individuals under the age of 16 years engaging in sexual conduct if a reasonable person would find that a dominant purpose of the depiction is to arouse or gratify sexual desire in either the perpetrator, individual under the age of 16 years, or viewer."

As part of his motion for acquittal filed at the end of the State's case, appellant urged that the State had failed to prove that the photographs were not taken for artistic purposes or that they were taken to arouse or gratify someone's sexual desire.  The State responded that §§ 419A and 423 were not part of the same subtitle and that the exemptions in § 423 therefore did not apply to offenses under § 419A.  Whether for that reason or some other, the court denied the motion, which was then withdrawn when appellant put on his defense.

Appellant did not offer an instruction on the issue until after the court had instructed the jury, at which point he asked the court "to give to the jury the exemptions of Article 27, Section [423(a) and (b)] in this case."  Although the State again responded that those exemptions did not "apply to this," the court simply ignored the request without explanation.

Assuming, *arguendo*, that his complaint is preserved, we find no error in the court's refusal to give such an instruction to the jury.  The State's contention at trial that § 419A is not part of the same subtitle as § 423 is not correct.  The two sections *are* part of the same subtitle.  The State's argument on appeal is different.  Here, it argues that the exemptions in § 423 apply only with respect to the possession or distribution of material and not to the photographing or filming of children proscribed by § 419A(c).

We need not consider that argument, for a more compelling reason exists to reject appellant's complaint: there is no evidentiary basis for the proposed instruction.  We

discussed the origin and purpose of § 423 in *400 E. Baltimore St. v. State, supra,* 49 Md.App. 147, 431 A.2d 682. Even if it were regarded as applying to conduct under § 419A(c), its focus would be on appellant's purpose for taking the photographs. *Id.* at 168–69, 431 A.2d 682. The problem is that appellant steadfastly denied having taken the photographs. The purpose for which they were taken, therefore, was never placed in issue; the defense was not one of justification, but solely one of criminal agency.

### Victim Impact Statement

Appellant's final argument rests upon the requirement of Md.Rule 4–342(d) that the State's Attorney "disclose to the defendant or counsel any information which the State expects to present to the court for consideration in sentencing within sufficient time before sentencing to afford the defendant a reasonable opportunity to investigate the information." The Rule further provides that, if the court finds that the information was not timely provided, it shall postpone sentencing. In appellant's case, the prosecutor gave defense counsel a copy of a victim impact statement he intended to use at sentencing just 20–25 minutes prior to the commencement of the sentencing hearing. Appellant now argues he should be resentenced.

Defense counsel informed the court of what had occurred at the beginning of the sentencing hearing. He did not ask for a postponement but simply said that "[t]o the extent that that is late filing if it is I object to that being considered. . . . Other than that if I have to address it. I will address it." The prosecutor explained that he had received the statement earlier and thought that it had been attached to the presentence investigation report sent to defense counsel. He observed as well that Jennifer's mother was in court to testify, and, apparently satisfied that no prejudice had occurred, the court said that it would consider the report. The mother did in fact testify and was cross-examined.

The victim impact statement consisted of a one-page statement from Jennifer which was fairly straightforward, a state-

ment from her mother which was consistent with her testimony, and some financial data.  The court did not mention these statements in announcing its sentence but did note appellant's extensive criminal history.  The sentence was within the guidelines.  On this record, we find no prejudicial error in the court's accepting the impact statement.

JUDGMENT AFFIRMED;  APPELLANT TO PAY THE COSTS.