705 A.2d 50

**Dorita M. HALL**

v.

**STATE of Maryland.**

No. 197, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Jan. 29, 1998.

378

380

Arthur A. Delano, Jr., Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Annabelle L. Lisic, Assistant Attorney General, Baltimore (J. Joseph Curran, Jr., Attorney General, Baltimore, and Andrew L. Sonner, (Former) State's Attorney for Montgomery County of Rockville, on the brief), for Appellee.

Argued before MURPHY, C.J., BYRNES, J., and THEODORE G. BLOOM, Judge (retired), Specially Assigned.

THEODORE G. BLOOM, Judge (retired), Specially Assigned.

Appellant, Dorita M. Hall, was convicted by a jury in the Circuit Court for Montgomery County (Ryan, J., presiding) of possession of cocaine and possession of marijuana. The court imposed concurrent prison sentences of four years and one year, plus a fine; suspended those sentences; and placed

appellant on probation for twelve months. In this appeal from those judgments, Ms. Hall asserts:

1. The court erred in admitting irrelevant evidence.

2. The evidence was insufficient to sustain the convictions.

Corporal Tammy Koniski of the Rockville City Police Department testified that she was part of a team or task force assigned to investigate drug activity at 747 Monroe Street, Apartment 202. The task force used a special informant to make a controlled buy at that address. Corporal Koniski also related that she received information that Patricia Hall and Donnie Hall, appellant's mother and stepfather, had moved to 706 Crab Avenue. After using a special informant to make a controlled buy at the new address, the officer obtained a search warrant. Donnie Hall, Anthony Baker, and Darryl Martin were present at the time of the execution of the warrant. Three scanners were found in "bedroom one." A rock of crack cocaine was found in a dresser drawer in the same bedroom. Personal papers and mail addressed to the appellant were found on top of the dresser. Razors, glassine baggies, and several bags of marijuana were found in "bedroom three." A marijuana roach, a lighter and a pipe were found on the dining room table. An unconventional pipe was found under the living room couch. Appellant testified that "bedroom one" was her bedroom.

Appellant testified that she lived at 706 Crab Avenue, the subject premises of the warrant. She said that she had gone to the mall and did not return until "12:45 a.m.," and was met by an officer who told her that the police had arrested Donnie Hall because he had been selling drugs out of her house. Appellant claimed that Donnie Hall did not live at that address, although he and her mother stayed in "bedroom three" when they visited on weekends. Appellant was also arrested. At trial she denied allowing drugs in her house, and offered an explanation as to why she had the pagers and scanners.

### I.

Appellant first contends, "The court erred admitting irrelevant evidence." Relying on *Zemo v. State*, 101 Md.App. 303,

310–11, 646 A.2d 1050 (1994), appellant argues that the course of the police investigation should not have been related to the jury unless it was relevant to the proof of her alleged offenses. Specifically, she cites as error evidence of prior drug activity at 747 Monroe Street and 706 Crab Avenue. She asserts that the reasons why the police executed a search warrant at 706 Crab Avenue were irrelevant. She says that the only issue was whether she possessed the drugs on the date in question.

■ Appellant's reliance on *Zemo* is appropriate. In that case, we had endeavored to "de-mythologize" the "Old Wives' Tale" that it is somehow necessary for the State to lay out for the jury the detailed course of a criminal investigation. As Judge Moylan, writing for this Court in *Zemo*, explained, unless such evidence has a *direct* bearing on the guilt or innocence of the defendant, the jury has no need to know the course of the police investigation. "That an event occurs in the course of a criminal investigation does not, *ipso facto*, establish its relevance." *Id.*, 101 Md.App. at 310, 646 A.2d 1050.

■ In this case, none of the testimony concerning the police investigations at 747 Monroe Street and 706 Crab Avenue, the information that led them to each of those addressees, the information contained in the application for a search warrant for 706 Crab Avenue, or the warrant issued thereon had any direct bearing on the guilt or innocence of appellant. Indeed, she was not the focus of the police investigations or the information that led to them; her mother and step-father were the ones the police suspected of dealing in controlled dangerous substances. The evidence of appellant's guilt was obtained as a result of a search of her home pursuant to a warrant. The details of the investigation leading to the issuance of that warrant were completely irrelevant. Whether there was probable cause for the issuance of a search warrant was no concern of the jury. The court erred in admitting the evidence complained of on this appeal.

The fact that the court erred, however, does not entitle appellant to an automatic reversal of her convictions. Most of

the trial court's errors in admitting the irrelevant evidence complained of were not preserved for appellate review, and those errors that were adequately preserved were harmless beyond any reasonable doubt.

At the beginning of her testimony, Corporal Koniski stated that she was then currently assigned to the Municipal Drug Task Force, which she described as a "street level type unit that concentrates on crack houses and street life dealing out on the street, basically the dealer." The unit operates primarily within the municipality, which includes the cities of Rockville and Gaithersburg. When the prosecuting attorney then asked the witness if she was with the drug task force in April 1995, defense counsel objected. That objection was overruled. The next question was, "Did there come a point in time when you investigated or were part of a team that investigated 747 Monroe Street?" The witness replied, "Yes, I was," and defense counsel said, "A continuing objection." The court responded, "Sure." The direct examination of Cpl. Koniski then continued as follows:

PROSECUTING ATTORNEY:

Q. Officer, would you outline what was the basis of that objection [sic] at that address?

A. At 747 we received a complaint from an anonymous source that stated that there was a lot of traffic, short term traffic going in and out of the residence. It was 747 Monroe Street, Apartment 202.

Also a sergeant from the Lincoln Park Task Force, he was uniformed, he had received a complaint also stating that there was drug activity at this residence.

Q. What city and town is that in?

A. Rockville, Montgomery County.

Q. Did you do anything as the basis of that investigation?

DEFENSE COUNSEL: Your Honor, I apologize to the Court. I am going to lodge an objection, but I want to do it up there.

THE COURT: Sure. Go right ahead.

DEFENSE COUNSEL: Thank you.

(Whereupon, a Bench Conference followed.)

DEFENSE COUNSEL: Your Honor, the officer has testified earlier as to two sources of information that are described as confidential or anonymous. During the course of discovery I made a request, which should be in the Court's file, and basically I asked the State supply me with an identification by name of each and every confidential informant (inaudible).

The State has failed to identify them, and that was the problem at the suppression hearing. There was hearsay coming in. I have no way to cross-examine and adequately prepare the cross-examination regarding these witnesses. Respectfully, Your Honor, I would request for a mistrial.

PROSECUTING ATTORNEY: Your Honor, I thought this issue was dealt with at the suppression hearing. Counsel had an opportunity to bring it up at that point before we even came up with a jury. The issue came up as to whether the officer had to identify those people.

Your Honor ruled that the officers did not to protect the special informants. Your Honor, we ask that that ruling is still in effect and that the Court should continue it.

THE COURT: I am going to overrule it.

(Whereupon, the Bench Conference was concluded.)

BY PROSECUTING ATTORNEY:

Q. Officer, on the basis of that complaint [sic], what did your unit do?

DEFENSE COUNSEL: Same objection, Your Honor, same basis.

THE COURT: Sure. Okay, [Prosecuting Attorney]. Go ahead.

THE WITNESS: We basically started what we call a file on the address and sent special informants to make controlled buys through the SI's.

BY PROSECUTING ATTORNEY:

Q. When you say SI what are you talking about?

A. The special informants.

Q. Would you explain to the jurors what is a special buy from the beginning to the end.

A. A controlled buy.

MR. KEHNEMUYI: Your Honor, the objection at this point is to personal knowledge from the witness only.

BY PROSECUTING ATTORNEY:

Q. If you were there, officer.

A. I was present. Basically what happens is the special informant, that person is physically searched to make sure they don't have any contraband or U.S. currency on them.

Q. Did that happen in your presence, officer?

A. Yes, it did.

Q. Then what happened?

A. Then they are given an amount of U.S. currency that is drawn from the Montgomery County Police Drug Fund, and at this point they go to the residence. We watch them walk to the residence constantly. They actually go to the residence and exit and then they come back with the buy.

Q. What did you do when the SI came back to you?

A. When the SI came back to me he handed over an amount of controlled dangerous substance, and then the SI is then searched again to make sure he doesn't have any other money or any other CDS on him. At that time the SI was found not to have any additional CDS on him.

Q. Officer, when you say CDS what do you mean?

A. A controlled dangerous substance.

Q. What do you mean by that?

A. Anything that is a controlled dangerous substance, cocaine, marijuana.

Q. What address was that at that that controlled buy was made?

A. That occurred at 747 Monroe Street, Apartment 202.

Q. Were you able to investigate to determine who lived at that address?

A. Yes, I was.

Q. What did you determine?

A. It was determined that the lessee was—

DEFENSE COUNSEL: Objection.

THE COURT: Overruled.

THE WITNESS: I believe that was Dorita Hall.

BY PROSECUTING ATTORNEY:

Q. Would it help to refresh your recollection?

A. It was verified through the resident manager of the apartment complex that it was Donnie Hall and Patricia Hall.

Q. What happened next, officer?

A. The next we received information . . .

DEFENSE COUNSEL: Objection.

THE COURT: Overruled.

THE WITNESS: I received information through a special informant that told me that Patricia Hall and Donnie Hall had moved from the 747 Monroe Avenue address to 706 Crab Avenue which is in Rockville.

BY PROSECUTING ATTORNEY:

Q. What did you do with that information, officer?

A. Again, we used a special informant once again and made a controlled purchase of crack cocaine.

Q. Did you follow the same procedures as you outlined to the jury before?

DEFENSE COUNSEL: Objection.

THE COURT: Sustained.

BY PROSECUTING ATTORNEY:

Q. What procedures did you use?

A. Basically I was present. Once again we met with the SI. The SI was searched. We sent them in to buy contraband. They were then given an amount of U.S. currency from the Drug Enforcement Fund and then we watched while they entered the residence and exited the residence. They returned back to me and handed over an amount of crack cocaine. When we searched we found no other contraband or U.S. money.

Q. What did you do after that, officer?

A. After that, as they say, I thought I had probable cause for a search warrant.

Q. I show you what has been previously marked as State's Exhibit No. 1. Would you identify that for the record?

A. Yes, this is the search warrant that I obtained for 706 Crab Avenue.

(The document referred to was marked for identification as State's Exhibit 1.)

BY PROSECUTING ATTORNEY:

Q. And State's Exhibit No. 2?

A. This is the face sheet of the search warrant.

(The document referred to was marked for identification as State's Exhibit 2.)

BY PROSECUTING ATTORNEY:

Q. Did you get the search warrant, officer?

A. Yes, I did.

Q. What did you do with it?

A. We executed the search warranted once it was obtained.

Q. Explain to the jury what does execute a warrant mean?

The officer then proceeded to explain, without objection, what is generally done in the execution for a search warrant. She then described the specific manner in which the search warrant for 706 Crab Avenue in Rockville was executed, including the search for contraband after making sure none of the people in the house were armed. The only objections made by appellant's counsel during the remainder of Officer

Koniski's testimony were to her identification of two certain items seized during the search:

Q. Officer, I am going to show you what has been marked as State's Exhibit No. 2. Can you identify that for the record?

A. Yes, these are three scanners that were found in bedroom number one.

DEFENSE COUNSEL: Objection as to the identification.

THE COURT: Identification for what?

DEFENSE COUNSEL: Personal knowledge, Your Honor. I am sorry. My objection is personal knowledge since this wasn't found by the officer.

BY PROSECUTING ATTORNEY:

Q. Officer, where were these found?

A. They were found in bedroom number one.

Q. Were you there?

A. Yes.

Q. Did you see them in bedroom number one?

A. Yes, I did.

. . .

Q. I am going to show you what has been marked as State's Exhibit No. 4. Can you identify this for the record?

A. Yes, these items were found on the dining room table.

Q. Can you describe for the record—

DEFENSE COUNSEL: Your Honor, again there is a continuing . objection based on her personal knowledge.

THE COURT: Okay, overruled.

■ It is a well recognized principle that, as a general matter, the admissibility of evidence admitted without objection cannot be reviewed on appeal. An objection is required so that the proponent of the evidence may rephrase the question or proffer so as to remove any objectionable defects, if possible. It also allows the trial judge to resolve as many

issues as possible, so as to avoid unnecessary appeals. McLain, *Maryland Evidence,* § 103.3. Md. Rule 5–103 specifically provides that "[e]rror can not be predicated upon a ruling that admits or excludes evidence unless the party is prejudiced by the ruling and ... [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was requested by the court or required by rules;...."

Appellant's complaint in this appeal is that the court erred in admitting evidence of prior drug activity at 747 Monroe Avenue and 706 Crab Avenue. Clearly, she did not object to every question eliciting such testimony. She asserts, however, that she was granted a continuing objection to the introduction of that evidence. Her reliance on the continuing objection is misplaced.

Md. Rule 4–323 prescribes the manner of making an objection to the admission of evidence in the trial of criminal cases. (Md. Rule 2–517 is the equivalent rule applicable in civil trials.) Section (b) of both rules provides:

> At the request of a party or on its own initiative, the court may grant a continuing objection to a line of questions by an opposing party. For purposes of review by the trial court or on appeal, the continuing objection is effective only as to questions clearly within its scope.

Furthermore, as Professor McLain points out, if the improper line of questioning is interrupted by other testimony or evidence and is thereafter resumed, counsel must state for the record that he or she renews the continuing objection. McLain, *Maryland Evidence,* § 103.12. Otherwise, it would be impossible for an appellate court to determine whether the trial judge regarded the continuing objection as remaining in effect. An appellate court will reverse or vacate a judgment only for judicial errors. Unless it appears that the trial judge is or should be aware, when a question is asked and no objection is voiced, that counsel is relying on the continuing

objection, the appellate court cannot conclude that the judge erred in not sustaining the "continuing" objection.

 In this case, the improper line of questioning to which the trial court allowed appellant a continuing objection related to the investigation by the Municipal Drug Task Force of an apartment at 747 Monroe Street. The scope of the questioning immediately took another tack when it elicited testimony that the Task Force was acting on the basis of complaints it had received from two unnamed sources. Defense counsel then interposed a new objection, based specifically on the anonymity of the police informants. When that objection was overruled, the next question asked of the witness was what her unit did as a result of that information. To that question, defense counsel said, "Same objection, Your Honor, same basis." It appears to us that "same basis" referred to the same basis as the immediately preceding objection, and was not a renewal of the "continuing objection" to the earlier questions. Then there was another objection when the witness was asked to explain what she meant by a "a controlled buy"; that objection was based on apparent lack of personal knowledge by the witness. Further along, still another objection was lodged by defense counsel to the question, "Were you able to determine who lived at [747 Monroe Street, Apartment 202]?" That objection was obviously based on the hearsay rule. Thereafter, the topic shifted away from the investigation at 747 Monroe Street to a new investigation at a different address.

Clearly, at some point after the court granted appellant a continuing objection, the prosecuting attorney's questions to the witness shifted to a different topic calling for a new objection on different grounds. The questioning later drifted back to the original topic, drug activity at the apartment on Monroe Street and the activities of the police in response to that activity—a controlled buy—but there was no notice to the trial judge that appellant had resumed reliance on the previously granted continuing objection. Thereafter, a totally new topic was addressed, the investigation at Crab Avenue. There

was no objection on the basis of lack of relevancy of evidence of an investigation at that address and no statement for the record that appellant renewed the continuing objection.

Our analysis of the questions posed to the witness by the prosecuting attorney after the court allowed appellant a continuing objection, the additional objections voiced by defense counsel and the stated reasons therefor, and the witness's answers leads us to the conclusion that the only improperly admitted evidence that clearly came within the scope of the continuing objection was:

(a) Cpl. Koniski was a member of the Municipal Drug Task Force in April 1995; and

(b) there came a time when she, or a team she was part of, investigated 747 Monroe Street.

All of the other evidence that appellant now contends was improperly admitted prejudicial, irrelevant evidence of police activities was either unobjected to or was objected to on other grounds.

 Appellant's convictions were based on evidence found as a result of a search warrant for a different address after the investigation at 747 Monroe Street was terminated. We are persuaded, therefore, that Cpl. Koniski's testimony that she was a member of a Drug Task Force that investigated an apartment on Monroe Street, although erroneously admitted, was harmless error beyond any reasonable doubt.

## II.

Appellant also complains that the evidence was insufficient to sustain her convictions. She insists that there was no evidence linking her to the drugs found in her home, or that she had knowledge of their presence.

 The standard for our review of the sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S.

307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Bloodsworth v. State*, 307 Md. 164, 167, 512 A.2d 1056 (1986). Weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact-finder. *Binnie v. State*, 321 Md. 572, 580, 583 A.2d 1037 (1991). In performing this fact-finding role, the jury has authority to decide which evidence to accept and which to reject. In this regard, it may believe part of a particular witness's testimony, but disbelieve other parts of that witness's testimony. *Muir v. State*, 64 Md.App. 648, 498 A.2d 666 (1985), *aff'd*, 308 Md. 208, 517 A.2d 1105 (1986). Circumstantial evidence is entirely sufficient to support a conviction, provided the circumstances support rational inferences from which the trier of fact could be convinced beyond a reasonable doubt of the guilt of the accused, *Finke v. State*, 56 Md.App. 450, 468–78, 468 A.2d 353 (1983), *cert. denied*, 299 Md. 425, 474 A.2d 218, *cert. denied*, 469 U.S. 1043, 105 S.Ct. 529, 83 L.Ed.2d 416 (1984). The same standard applies to all criminal cases, including those resting upon circumstantial evidence, *Wiggins v. State*, 324 Md. 551, 567, 597 A.2d 1359 (1991), since, generally, proof of guilt based in whole or in part on circumstantial evidence is no different from proof of guilt based on direct eyewitness accounts. *See Eiland v. State*, 92 Md.App. 56, 607 A.2d 42 (1992), *rev'd on other grounds*, 330 Md. 261, 623 A.2d 648 (1993).

 Appellant was found guilty of violating art. 27 § 287(a), which, in part, makes it unlawful "[t]o possess ... any controlled dangerous substance...." Md.Code Ann., art. 27, § 287(a) (1992 Repl.Vol., 1995 Supp.). Possession is defined as "the exercise of actual or constructive dominion or control over a thing by one or more persons." *Id.* At § 277(s). The statute recognizes that possession may be joint. *See Cook v. State*, 84 Md.App. 122, 134, 578 A.2d 283 (1990), *cert. denied*, 321 Md. 502, 583 A.2d 276 (1991). In order to sustain a conviction for possession the evidence must show directly or support a rational inference not only that the accused had knowledge of the presence and illicit nature of the charges, *Dawkins v. State*, 313 Md. 638, 651, 547 A.2d 1041 (1988), but

that the accused did in fact exercise some dominion or control over the contraband.

In *Folk v. State*, 11 Md.App. 508, 518, 275 A.2d 184 (1971), we said that among the factors to be considered in determining whether there was joint possession are the following:

> 1) proximity between the defendant and the contraband, 2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, 3) ownership or some possessory right in the premises or the automobile in which the contraband is found, or 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband.

In this case, acting under authority of a search warrant, the police found in appellant's bedroom crack cocaine residue and a razor blade in a bowl on the nightstand, a baggie of marijuana in the drawer, along with a package of rolling papers and a marijuana cigarette, a second bowl containing a roach on top of a stereo, and a police scanner set to the Special Investigations Division channel. Various drugs and paraphernalia were found in other bedrooms of the one-story house; a baggie of cocaine was lying on the dining room table. That evidence, which clearly supported a rational inference that appellant had knowledge of and both constructive and actual control of the drugs found in her home, was more than ample evidence to convict.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**