886 A.2d 932

Nathaniel **COTTMAN**, Jr.

v.

**STATE of Maryland.**

No. 827, Sept. Term 2004.

Court of Special Appeals of Maryland.

Oct. 31, 2005.

682

684

‗80

Arthur A. DeLano, Jr. (Nancy S. Forster, Public Defender, on brief), for appellant.

Edward J. Kelley (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel SALMON, KENNEY, and EYLER, DEBORAH S., JJ.

KENNEY, J.

Nathaniel Cottman, Jr., appellant, was convicted in the Circuit Court for Baltimore County of distribution of cocaine, conspiracy to distribute cocaine, and possession of cocaine. Appellant was sentenced, as a repeat offender, to ten years' incarceration without the possibility of parole, for the distribution conviction. The remaining convictions were merged for sentencing purposes.

Appellant presents two questions for our review, which we have reworded as follows:

I. Did the county administrative judge's designee err in denying appellant's request for a postponement?

II. Was the evidence sufficient to sustain appellant's convictions?

For the following reasons, we shall affirm appellant's convictions.

## FACTUAL AND PROCEDURAL HISTORY

In the early morning hours of August 14, 2002, appellant and Ms. Benson were arrested following the completion of a drug deal with Earnest Moore, an undercover Baltimore County Police Detective. On June 2, 2004, the morning that appellant's trial was to commence in the Circuit Court for Baltimore County, appellant's trial counsel appeared before the designee of the administrative judge and requested a continuance, claiming, among other things, that he had just located a "critical" witness for the defense. The designee of the administrative judge denied the motion, noting that the trial had been postponed on four prior occasions. The case proceeded to a trial on the merits.

Detective Moore, a member of the Essex Community Drug and Violence Interdiction Team, was the State's only witness. At approximately 5:45 on the morning of August 14, 2002, he was wearing "undercover clothes" and driving an unmarked sport utility vehicle on Dartford Road in Essex. He witnessed several individuals leaning against a car parked in front of 1614 Dartford Road. A woman, later identified as "Ms. Benson," shouted: "Hey, come here." Detective Moore pulled his vehicle to the curb and Benson, along with a male Detective Moore identified as appellant, approached.

Benson stood next to the driver's window. Appellant stood at the driver's mirror and leaned toward the driver's window, approximately two to three feet from Detective Moore. Benson asked Detective Moore whether he was a police officer, and he replied that he was not. Appellant then inquired: "Are you sure you're not police?" Detective Moore repeated his denial. Benson asked Detective Moore if he had been drinking, and lying, Detective Moore claimed that he had. Benson smelled his breath, and said, "Yeah, he's all right." Appellant walked to the front of the police vehicle and looked up and down the street. Detective Moore said that "lookouts" "commonly traveled with drug dealers in that area," and

during drug transactions, "will keep a lookout to try to identify any police that are in the area." According to Detective Moore, appellant's actions were consistent with a drug dealer's lookout.

While appellant was standing at the front of the vehicle, Benson asked Detective Moore what he wanted. Detective Moore responded that he wanted $20 worth of cocaine, and Benson retrieved a small bag of cocaine from her mouth. She exchanged the bag for a $20 bill Detective Moore presented. During the transaction, Detective Moore saw appellant's face for "20 seconds, maybe at the most."

As he drove away, Detective Moore witnessed Benson and appellant walk together toward the group in front of 1614 Dartford Road. He notified the surveillance units working with him that he had made a drug purchase and described appellant and Benson. Two to three minutes later, he returned to Dartford Road and walked to where appellant and Benson were being detained. Detective Moore identified both as the individuals involved in the earlier transaction. At trial, Detective Moore again identified appellant and testified that he had no doubt regarding his identification.

Incident to his arrest, appellant was searched, but no drugs or money was found. The substance in the bag Benson gave to Detective Moore was later analyzed and found to contain 0.2 grams of cocaine. Appellant stipulated that the substance in the bag was cocaine, and the drugs were admitted into evidence.

After the State rested, appellant moved for judgment of acquittal, which was denied. Appellant was advised of his constitutional rights, and declined to testify. He presented no additional evidence.

The circuit court found Detective Moore's testimony "very credible," and concluded that appellant had aided and abetted the distribution of drugs and found him guilty of distribution of cocaine, conspiracy to distribute cocaine, and possession of cocaine. As noted, appellant was sentenced to ten years' incarceration for distribution of cocaine, and the remainder of

his convictions were merged for sentencing purposes. This appeal followed.

## DISCUSSION

### I.

■ Appellant contends that the administrative court abused its discretion in denying the postponement.[1] He asserts that "[c]ounsel did not learn of the critical witness until the morning of trial," and that the witness is "the person that did the crime [and] is willing to come in and testify that he did it." The nature of the witness's testimony and his willingness to testify, however, were not proffered to the court when the continuance was requested.

Maryland Rule 4–271 provides, in pertinent part:

On motion of a party, or on the court's initiative, and for good cause shown, the county administrative judge or that judge's designee may grant a change of a circuit court trial date. If a circuit court trial date is changed, any subsequent changes of the trial date may be made only by the county administrative judge or that judge's designee for good cause shown.

*See also* Maryland Code (2001), § 6–103(b) of the Criminal Procedure Article ("C.P.").

■ Rulings on requests for continuances are within the sound discretion of the administrative judge and will not be disturbed on appeal absent an abuse of that discretion. *See Evans v. State*, 304 Md. 487, 514, 499 A.2d 1261 (1985); *Whack v. State*, 94 Md.App. 107, 117, 615 A.2d 1226 (1992); *Burgess v. State*, 89 Md.App. 522, 534, 598 A.2d 830 (1991). To establish that the administrative judge abused his discretion in denying a continuance to obtain a witness, the party who requested the continuance must demonstrate:

---

1. Appellant does not specifically argue that the administrative judge's designee failed to exercise any discretion in denying his motion for continuance.

"(1) that he had a reasonable expectation of securing the evidence of the absent witness or witnesses within some reasonable time; (2) that the evidence was competent and material, and he believed that the case could not be fairly tried without it; and (3) that he had made diligent and proper efforts to secure the evidence."

*Whack,* 94 Md.App. at 117, 615 A.2d 1226 (quoting *Wright v. State,* 70 Md.App. 616, 623, 522 A.2d 401 (1987)).

Here, appellant did not establish that he had exercised diligence in discovering and producing the witness. Defense counsel merely informed the trial court that the defense had located a witness the defense had been unable to locate previously. He did not, however, detail the efforts he or appellant had made to locate the witness, or otherwise provide information regarding the circumstances of finding the witness. In addition, defense counsel did not explain why the witness was "critical," except with reference to the seriousness of the offenses with which appellant was charged and the consequences of appellant being convicted. Defense counsel did not proffer that the witness's testimony was competent and material, or that appellant "could not be fairly tried without [the witness]." He did not inform the administrative judge that the witness "was the person that did the crime" or that the witness was "willing to come in and testify that he did it." Therefore, we are persuaded that the administrative court did not abuse its discretion in denying appellant's request for a postponement.

## II.

Appellant also contends that the evidence was insufficient to sustain his convictions. He argues first that the evidence was insufficient to establish that he was "the male subject who approached Detective Moore's car." Because the "entire transaction lasted just a few seconds," and Detective Moore's attention was "focused on the female seller," appellant asserts that Detective Moore "did not have an opportunity to see the male subject." Furthermore, appellant contends that, even if

Detective Moore's identification is credited, the State "failed to prove that the male subject exercised the requisite dominion and control over the cocaine to justify any rational trier of fact in concluding that he 'possessed' the cocaine at issue."

In reviewing appellant's challenge to the sufficiency of the evidence, this Court does not "undertake a review of the record that would amount to, in essence, a retrial of the case." *State v. Albrecht*, 336 Md. 475, 478, 649 A.2d 336 (1994). Rather, an appellate court reviews the evidence in the light most favorable to the prevailing party below, in this case, the State. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

We give due deference to the trier of fact's "finding of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses." *Albrecht*, 336 Md. at 478, 649 A.2d 336. So long as we find that "any rational trier of fact could have found the elements of the crime beyond a reasonable doubt, the appellant's conviction must be upheld." *Cooper v. State*, 128 Md. App. 257, 266, 737 A.2d 613 (1999) (citing *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781). In other words,

> our concern is not with whether the trial court's verdict is in accord with what appears to us to be the weight of the evidence, but rather is only with whether the verdicts were supported with sufficient evidence—that is, evidence that either showed directly, or circumstantially, or supported a rational inference of facts which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt.

*Albrecht*, 336 Md. at 478–79, 649 A.2d 336 (internal citations omitted). The question before us is limited; it is " 'not whether the evidence *should have* or *probably would have* persuaded the majority of fact finders but only whether it *possibly could have* persuaded *any* rational fact finder.' " *Mora v. State*, 123 Md.App. 699, 727, 720 A.2d 934 (1998), *aff'd*, 355 Md. 639, 735 A.2d 1122 (1999), (quoting *Fraidin v. State*, 85 Md.App. 231, 241, 583 A.2d 1065 (1991)) (emphasis in

*Fraidin* ). A "trial court's findings as to disputed facts are accepted by this Court unless found to be clearly erroneous after having given due regard to the lower court's opportunity to assess the credibility of the witnesses." *McMillian v. State,* 325 Md. 272, 281–82, 600 A.2d 430 (1992).

We first consider appellant's assertion that the evidence was insufficient to establish that he was the "male subject who approached Detective Moore's car," and therefore, insufficient to sustain any of his convictions.

Detective Moore was a trained police officer, and, during the illicit transaction, he was necessarily aware that later he would likely need to identify Benson and her companion. *See Thomas v. State,* 139 Md.App. 188, 211, 775 A.2d 406 (2001), *aff'd,* 369 Md. 202, 798 A.2d 566 (2002) (noting that a police officer making a photographic identification of a suspect six weeks after an undercover drug purchase "was not a lay witness describing a criminal to police; he was a police officer making a mental note of what he had seen during the commission of a crime"). At trial, he identified appellant as the "subject that was there that evening." Appellant stood by his driver's side mirror and leaned into the driver's window. Detective Moore maintained that he was able to see both Benson and appellant during the transaction from two to three feet away. He identified appellant minutes after the transaction, and at trial, he remained certain of his identification.

If Detective Moore's testimony was credited, which it was, a rational trier of fact could have concluded that appellant was the person who approached Detective Moore's vehicle, asked him whether he was a police officer, stood in the front of his vehicle looking up and down the road during the drug sale, and accompanied Benson across the street after the sale. We next consider whether appellant's actions were sufficient to sustain his convictions for possession, distribution, and conspiracy to distribute cocaine.

Appellant claims that, even if Detective Moore's testimony is credited, the evidence, viewed in the light most favorable to the State, merely demonstrated that appellant was present at

the scene at the time the sale occurred. Because there was no evidence that he held the cocaine or the money, or otherwise directed Benson, the evidence was insufficient to permit a rational trier of fact to conclude that he exercised dominion or control over the cocaine.

In response, the State asserts that, although the cocaine was produced from Benson's mouth, there was sufficient evidence presented from which "it could be inferred . . . that this was Benson's and [appellant's] method of concealing their cocaine before it was distributed to their buyers." Therefore, the State maintains, there was sufficient evidence for a rational trier of fact to find that appellant was in constructive possession of the cocaine. Alternatively, the State contends that "a determination by this Court that the evidence was insufficient to show that [appellant] possessed the cocaine at issue would not require reversal of [appellant's] convictions for distribution of cocaine or conspiracy to distribute cocaine. [Appellant's] conviction for distribution was based on an aiding and abetting theory."

In finding appellant guilty, the circuit court stated: "I can't find beyond all doubt that [appellant] knew what he was doing, but I certainly find beyond a reasonable doubt that he was aiding and abetting the distribution of drugs, and therefore, the court finds him guilty of the charges against him."

 "Under Maryland law, one may commit an offense as either a principal in the first degree, or a principal in the second degree." *Evans v. State,* 382 Md. 248, 263 n. 11, 855 A.2d 291 (2004). The actual perpetrator of a crime is termed the first degree principal. *Owens v. State,* 161 Md.App. 91, 99, 867 A.2d 334 (2005). "[O]ne who encourages, aids, abets, or assists the active perpetrator in the commission of the offense, is a guilty participant, and in the eye of the law is equally culpable with the one who does the act." *Grandison v. State,* 305 Md. 685, 703, 506 A.2d 580 (1986). " 'A second degree principal must be either actually or constructively present at the commission of a criminal offense and aid, counsel, command, or encourage the commission of that of-

fense.'" *Owens*, 161 Md.App. at 99, 867 A.2d 334 (quoting *State v. Raines*, 326 Md. 582, 593, 606 A.2d 265 (1992)). *See also Odum v. State*, 156 Md.App. 184, 192, 846 A.2d 445 (2004) ("A person may be guilty of a felony, as a principal in the second degree, by aiding, counseling, commanding or encouraging, either actually or constructively, the commission of the felony in the person's presence."). A principal in the second degree, "in the eye of the law[,] is equally culpable with the one who does the act." *Grandison*, 305 Md. at 703, 506 A.2d 580.

A person's mere presence at the scene of the crime is not sufficient to establish that he or she participated in the crime. *See, e.g., Fleming v. State*, 373 Md. 426, 433–34, 818 A.2d 1117 (2003). It is, nonetheless, "an important element" in determining whether that person participated in the crime. *Id.* at 434, 818 A.2d 1117.

### A. Distribution of Cocaine Conviction

In *McMorris v. State*, 26 Md.App. 660, 338 A.2d 912 (1975), *aff'd* 277 Md. 62, 355 A.2d 438 (1976), this Court upheld a conviction for distribution of heroin of the person who brokered and directed a sale of heroin between an undercover police officer and another individual. In so doing, we reasoned that, "[a]lthough appellant was not shown to have been in actual possession of the drug, he was an aider and abettor in its distribution and thus responsible as a principal in the second degree." *Id.* at 664, 338 A.2d 912.

Here, the circuit court credited Detective Moore's testimony that appellant acted as the "lookout" during the drug sale. Appellant stood next to Benson when she inquired into whether Detective Moore was a police officer. After Detective Moore denied being an officer, appellant again queried the prospective purchaser in order to be "sure" that he was not a police officer, and after further checking, Benson assured appellant that Detective Moore was "all right." Not until then did the sale begin, and not until then did appellant walk to the front of Detective Moore's vehicle. This evidence supports an

inference that appellant knew of the presence of the drugs and of the impending sale; otherwise, appellant would have had no reason to question Detective Moore or act as a "lookout." Under these circumstances, a reasonable fact finder could conclude that appellant encouraged and assisted Benson in the distribution of cocaine. *See also Farmer v. State,* 5 Md.App. 546, 553, 248 A.2d 809 (1968) ("A person who serves as lookout is as guilty as a person who does the actual robbing."); *Thomas v. State,* 2 Md.App. 502, 507, 235 A.2d 777 (1967)("One who keeps watch or guard at such convenient distance as to afford aid or encouragement to the actual perpetrator of a robbery is clearly a principal.").

## B. Possession of Cocaine Conviction.

Based on the arguments presented in their respective briefs, it appears that both appellant and the State presume that a defendant cannot be convicted of possession of controlled dangerous substances under an aiding and abetting theory. Although it appears to be a matter of first impression in Maryland, the majority of courts addressing the issue have concluded that nothing in statutes criminalizing possession of controlled dangerous substances precludes the application of general accomplice liability law. *See, e.g., United States v. Martin,* 920 F.2d 345, 348 (6th Cir.1990) (finding that there was sufficient evidence to support the defendant's conviction for possession of cocaine with intent to distribute on the grounds of aiding and abetting where the defendant acted as a lookout by following the person in actual possession of drugs and concluding that "[o]ne who acts as a lookout for another in possession of a kilogram of cocaine is one who associates himself with the criminal venture, participates in it, and seeks by his acts to make it succeed"); *Blakeney v. United States,* 653 A.2d 365 (D.C.1995) (upholding a defendant's conviction for aiding and abetting possession of cocaine with intent to distribute where the defendant acted as a lookout and was handed money subsequent to drug transactions witnessed by surveilling officers). *See also United States v. Infante,* 404 F.3d 376 (5th Cir.2005); *United States v. Cartwright,* 359 F.3d

281 (3rd Cir.2004); *United States v. Burgos*, 94 F.3d 849 (4th Cir.1996); *United States v. Gillock*, 886 F.2d 220 (9th Cir. 1989); *United States v. Schwartz*, 666 F.2d 461 (11th Cir. 1982); *Wagers v. Alaska*, 810 P.2d 172 (Alaska Ct.App.1991); *Arizona v. Green*, 116 Ariz. 587, 570 P.2d 755 (1977); *Massachusetts v. James*, 30 Mass.App.Ct. 490, 570 N.E.2d 168 (1991); *People v. Hinton*, 178 A.D.2d 279, 577 N.Y.S.2d 63 (1991); J.A. Bryant, Jr., *Offense of Aiding and Abetting Illegal Possession of Drugs or Narcotics*, 47 A.L.R. 1239 (1973). *But cf. D.M. v. State*, 714 So.2d 1117, 1120 (Fla.Ct. App.1998) ("[A] defendant who assists a confederate in selling or delivering a contraband drug does not, by so doing, aid and abet the confederate in the latter's actual possession of such drug because the defendant has not assisted the confederate in either acquiring or retaining the drug. . . .").

We find *Bullock v. United States*, 709 A.2d 87 (D.C.1998), instructive. In that case, police observed the activities of three men on a street in a "high drug area." *Id.* at 89. One of the suspects, Bullock, handed a bundle of packets to another suspect, Davis. Davis secreted the packets at the base of a nearby tree. Afterwards, the third suspect, Rawlinson, approached Davis and the two engaged in a conversation. Although the surveilling officer could not hear what was said, Davis gestured towards the tree and Rawlinson nodded in response. During the surveillance, Rawlinson directed a passerby to Davis, who thereafter appeared to sell the pedestrian drugs from the stash. For approximately the next hour, Davis appeared to engage in five or six more drug transactions with pedestrians.[2] After each sale, Davis reportedly gave the proceeds to Bullock, who lingered in a nearby alley. The officer also witnessed the three men confer with one another in a group.

The surveilling officer ordered the arrest of the three suspects. Incident to his arrest, $115 was found in Bullock's

---

2. The officer also reportedly witnessed Rawlinson engage in drugs sales, but his testimony was unclear and was not considered in the court's decision.

pockets, and the arresting officers uncovered two small cellophane bags containing heroin at the base of the tree. No drugs or money were found on Rawlinson. At trial, in addition to the testimony of the surveillance officer and the evidence obtained at the arrest scene, an expert testified regarding the operation of "open-air drug enterprises." *Id.* at 90. The expert explained that such drug enterprises typically consist of a "runner" that "solicit[s] potential customers and direct[s] them to the 'holder,' who supervised the supply of drugs." *Id.* A jury convicted Bullock of distribution of heroin and both Bullock and Rawlinson were convicted of possession of heroin with intent to distribute.

On appeal, considering Rawlinson's challenge to his conviction for possession with intent to distribute, the District of Columbia Court of Appeals initially noted that "Rawlinson's case was submitted to the jury under two alternative theories, as a principal and as an aider and abettor." *Id.* at 93. With regard to the constructive possession theory, the Court determined that "the jury could infer that Rawlinson knew the location of the stash and that he shared both the ability and intent to exercise dominion and control over the stash by the tree." *Id.* Alternatively, the *Bullock* Court reasoned that "the same evidence was sufficient to sustain Rawlinson's conviction under an aiding and abetting theory." *Id.* According to the District of Columbia Court of Appeals, to be convicted of aiding and abetting possession with intent to distribute, "the government must prove that (1) someone committed the [possession with intent to distribute] offense as a principal and (2) appellant knowingly assisted or participated in the principal's offense." *Id.* at 94 (citing *Blakeney,* 653 A.2d at 370). The court concluded that there was sufficient evidence that either Davis or Bullock possessed the heroin, and that "the jury could infer from the government's evidence that Rawlinson knowingly assisted or participated in the [possession with intent to distribute] by acting as a runner." *Id.*

In the instant case, as in *Bullock,* there was sufficient evidence to sustain appellant's conviction for possession of

cocaine under either an aiding and abetting theory or a constructive possession theory. Maryland Code (2002), § 5–601(a)(1) of the Criminal Law Article ("C.L."), makes it a crime to "possess or administer to another a controlled dangerous substance, unless obtained directly or by prescription or order from an authorized provider acting in the course of professional practice[.]" C.L. § 5–101(u) defines "possess," in relevant part, as "to exercise actual or constructive dominion or control over a thing by one or more persons." The Court of Appeals has explained that "[t]o prove control, the ' "evidence must show directly or support a rational inference that the control over the prohibited ... drug in the sense contemplated by the statute, *i.e.*, that [the accused] exercised some restraining or direct influence over it." ' " *White v. State*, 363 Md. 150, 163, 767 A.2d 855 (2001) (quoting *McDonald v. State*, 347 Md. 452, 474, 701 A.2d 675 (1997)) (alternations in original). Moreover, " '[k]nowledge of the presence of an object is normally a prerequisite to exercising dominion and control.' " *Id.* (quoting *Dawkins v. State*, 313 Md. 638, 649, 547 A.2d 1041 (1988)). "[S]uch knowledge may be proven by circumstantial evidence and by inferences drawn therefrom." *Dawkins*, 313 Md. at 651, 547 A.2d 1041.

Possession need not be exclusive, but may be joint. *Hall v. State*, 119 Md.App. 377, 393, 705 A.2d 50 (1998). It is also not necessary that the drugs be on appellant's person for him to possess them. *State v. Suddith*, 379 Md. 425, 432, 842 A.2d 716 (2004). In cases where two or more people were charged with the possession of contraband in a home or vehicle, we have relied upon the following factors in determining whether there was joint possession:

(1) the proximity between the defendant and the contraband, (2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, (3) ownership or some possessory right in the premises or the automobile in which the contraband is found, or (4) the presence or circumstances from which a reasonable inference could be drawn that the defendant was participating

with others in the mutual use and enjoyment of the contraband.

*Hall,* 119 Md.App. at 394, 705 A.2d 50 (citing *Folk v. State,* 11 Md.App. 508, 518, 275 A.2d 184 (1971)).

 Here, the evidence was clearly sufficient to establish that appellant assisted Benson in selling cocaine to Detective Moore. Appellant was always in close proximity to Benson, who physically transported the cocaine in her mouth. The circumstances permit the reasonable inference that the existence and the purpose of the cocaine was within appellant's knowledge, and that he was participating with Benson in the sale. To be sure, appellant, by engaging in the determination of the prospective buyer's good faith, and by acting as a "lookout" during the sale, assisted Benson in distributing the cocaine, but his presence also served to protect Benson's physical possession of the drugs prior to the sale. Therefore, the evidence was sufficient to sustain appellant's conviction for possession of cocaine as a second degree principal.

In *Anderson v. State,* 385 Md. 123, 867 A.2d 1040 (2005), the Court of Appeals held, in the context of a double jeopardy determination, that the crime of distribution of a controlled dangerous substance, by definition, includes all of the elements of the crime of possession of a controlled dangerous substance. *Id.* at 132–33, 867 A.2d 1040. The Court explained that C.L. § 5–602(1) prohibits the distribution of controlled dangerous substances, and according to C.L. § 5–101(*l* ), "distribute" means "to deliver other than by dispensing." C.L. § 5–101(k) defines "deliver" as "to make an actual, constructive, or attempted transfer or exchange from one person to another whether or not remuneration is paid or an agency relationship exists." Writing for the Court, Judge Wilner expounded on the crimes of possession and distribution of controlled dangerous substances as follows:

> Putting these various definitions together, distribution occurs when a controlled dangerous substance is delivered, either actually or constructively, other than by lawful order of an authorized provider. It is not possible, under these

statutes, to "distribute" a controlled dangerous substance in violation of § 5–602 unless the distributor has actual or constructive possession (dominion or control) of the substance. Thus, possession of the substance distributed is necessarily an element of the distribution. The crime of distribution obviously contains an element not contained in the crime of possession—the distribution—but there is no element in the crime of possession not contained in the crime of distribution.

*Id.* at 132–33, 867 A.2d 1040.

It would seem to follow, therefore, that if an individual aids and abets the distribution of a controlled dangerous substance, he or she necessarily also aids and abets the first degree principal's possession of a controlled dangerous substance.

■ Alternatively, a rational trier of fact could have concluded that appellant, along with Benson, constructively exercised dominion and control over the cocaine. Appellant approached Detective Moore's vehicle with Benson and stood next to her immediately prior to the sale. As discussed above, his knowledge of the presence of the cocaine can be inferred from his question posed to Detective Moore. Although no money or drugs were found on appellant incident to his arrest, it is a rational inference that appellant had "earned" some portion of the proceeds from the sale or other consideration by acting as a lookout and protecting both Benson and the drugs, such that he shared in the mutual use and enjoyment of the cocaine. His concern that Detective Moore might be a police officer and his acting as a lookout during the transaction permits an inference that appellant exercised a restraining influence over the cocaine. In other words, he could halt the sale in the event that he sensed police involvement or intervention. Viewing the evidence, and the inferences derived therefrom, in the light most favorable to the prosecution, we are persuaded that a reasonable fact finder could have found that appellant was in constructive joint possession of the cocaine.

### C. Conspiracy to Distribute Cocaine Conviction.

Finally, we consider appellant's contention that the evidence was insufficient to sustain his conviction for conspiracy to distribute cocaine. The Court of Appeals has defined the crime of conspiracy as "the combination of two or more persons to accomplish some unlawful purpose, or to accomplish a lawful purpose by unlawful means. The essence of the criminal conspiracy is an unlawful agreement." *Townes v. State*, 314 Md. 71, 75, 548 A.2d 832 (1988). Therefore, in order to sustain a conviction for conspiracy to distribute a controlled dangerous substance, the State need only establish that there was an agreement. *Anthony v. State*, 117 Md.App. 119, 127, 699 A.2d 505 (1997). "[B]ecause secrecy is the norm in drug conspiracies, each element of the crime [of conspiracy] may be established by circumstantial evidence." *Infante*, 404 F.3d at 385. In the instant case, evidence of appellant's and Benson's agreement to distribute cocaine is demonstrated through appellant's actions in aiding and facilitating the sale of cocaine to Detective Moore.

The evidence was, therefore, sufficient to sustain each of appellant's convictions.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**